IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

MAUREEN E. DELORETO and )
DIANE E. HORTON, )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiffs, )
　　v. ) C. A. NO. 05-CV-10712 RCL
　　　　　　　　　　　　　　　　　　　　　　)
SOVEREIGN BANK, )
　　　　　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant. )
　　　　　　　　　　　　　　　　　　　　　　)

**DEFENDANT SOVEREIGN BANK'S**
**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS**

**I.      INTRODUCTION**

Defendant, Sovereign Bank ("Sovereign") operates automated teller machines ("ATMs") throughout Massachusetts, Rhode Island and several other states. In most instances, Sovereign charges a convenience fee to non-Sovereign consumers who use Sovereign ATMs.[1] The Electronic Funds Transfer Act, 15 U.S.C. §1693 *et seq.* ("EFTA" or "the Act") and the implementing regulations adopted by the Federal Reserve Board pursuant to the Act, 12 C.F.R. §205, govern the right of financial institutions to charge such fees.

The Act requires two types of notices -- one exterior general placard notice (the "Placard Notice") as well as a second notice to appear on the ATM screen (the "Screen Notice").[2] *See* 15

---

[1]     Plaintiffs incorrectly allege "on information and belief" that Sovereign always charges ATM user fees to non-Sovereign customers. However, this Court need not accept as true conclusory allegation that are not logically compelled or at least supported by stated facts. *See, e.g., U.S. v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992); *Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 15 (1st Cir. 1989).

[2]     The Screen Notice contemplated by Section 1693b(d)(3)(B)(ii) and 12 C.F.R. §205.16(c)(2) can, in certain circumstances, be provided *via* paper medium. The Amended

U.S.C. §§1693b (d)(3)(B)(i) and 1693b (d)(3)(B)(ii). Plaintiffs do not challenge the sufficiency of Sovereign's Screen Notice. Thus, the entire Amended Complaint rests on alleged deficiencies in Sovereign's Placard Notices at its Plainville[3] and Seekonk locations.

Sovereign posts Placard Notices at all of its ATM machines, including the machines at the Plainville and Seekonk branches. In each instance the Placard Notice states:

> Sovereign Bank may charge a fee to U.S. cardholders for withdrawing cash. This fee is added to the amount of your withdrawal by Sovereign Bank and is in addition to any fees that may be charged by your financial institution. This convenience fee does not apply to Sovereign Bank cardholders.

*See* Amended Complaint ¶ 15(c)[4] and Exhibits C, G, K, and O.

In addition to this Placard Notice, before executing any transaction, a non-Sovereign cardholder receives an additional notice on the ATM screen, which informs those cardholders who will be a charged a fee, that a fee of a specified amount will be charged on the transaction (the " Convenience Fee").[5] Significantly, this notice appears on the ATM screen before the consumer completes any transaction. Indeed, in order to proceed to complete a transaction, the consumer must affirmatively elect to accept the specified fee. Thus, no consumer could complete a transaction at any Sovereign ATM

---

Complaint contains no allegations relating to a paper medium. Therefore, for ease of reference, Sovereign refers to the notice envisioned by Section 1693b (d)(3)(B)(ii) as the Screen Notice.

[3]   The Amended Complaint states that the Plainville ATM is located in North Attleboro. *See* Amended Complaint ¶ 9. However, as the receipt attached to the Amended Complaint as Ex. B shows, the ATM at issue is actually located in Plainville, Massachusetts.

[4]   Paragraph 15(c) of the Amended Complaint contains a typographical error that has been omitted from the quoted language. In the Amended Complaint, the second sentence of the quotation reads as follows: "This fee is **in** added to the amount of your withdrawal by Sovereign Bank and is in addition to any fees that may be charged to your financial institution." *See* Amended Complaint ¶15(c) (emphasis added). As shown by Exhibits C, G, K, and O, the bolded word "in" does not appear in Sovereign's Placard Notice.

[5]   Currently the Convenience Fee charged by Sovereign is $1.50 per transaction.

without clearly understanding whether or not a fee would be charged and knowing the exact amount of any such fee.

After affirmatively choosing to proceed with their transactions, plaintiffs brought this putative class action for the sole purpose of quibbling over the wording, typeface and location of the Placard Notices. Amazingly, they do not allege that they failed to see the Placard Notices when they used Sovereign's Plainville and Seekonk ATMs. Instead, based on less than a handful of gossamer thin conclusory allegations, Plaintiffs assert that Sovereign: (1) failed to state the amount of the fee it would charge a non-account holder for use of the ATM terminal; (2) stated that such fee "may" be charged, as opposed to "will" be charged; (3) utilized a typeface that, by virtue of its size and color, was not easily read by the average consumer; and (4) posted its notices in "inconspicuous" locations. With nothing more than these four thin reeds to sustain their Amended Complaint, plaintiffs seek class certification for a class consisting of all non-Sovereign customers who engaged in transactions at Sovereign ATMs anywhere in Massachusetts or Rhode Island during the period April 11, 2004 through May 1, 2005 and were charged a fee in connection with the transaction. *See* Amended Complaint, ¶ 18.

As an analysis of the EFTA discloses, however, plaintiffs ground their claims on a fundamental misreading and/or a misconstruction of the Act. Contrary to plaintiffs' arguments, nothing in the EFTA or the relevant regulations requires Sovereign to state the amount of the ATM convenience fee on the Placard Notice. Thus, the first of plaintiffs' four reeds fails as a matter of simple statutory construction. Similarly, plaintiffs' second reed crumbles because, as a matter of law, Sovereign's use of the word "may" rather than "will" in its Placard Notice fully complies with the requirements of the Act and the operative regulations. A cursory reading of the EFTA also serves to highlight the ephemeral nature of the third reed in plaintiffs' argument.

Simply stated, the Act's "prominent and conspicuous" requirement applies only to the location of the Placard Notice not to the style of presentation or content. Other provisions of the Act govern the style and content of notices and the plaintiffs do not – and cannot – allege any violation of those provisions. Finally, as the photographs attached as Exhibits A through O conclusively establish, no reasonable fact finder could conclude that the Placard Notices posted by Sovereign at its Plainville and Seekonk facilities were not prominent and conspicuous within the meaning of the ETFA.

In short, as a matter of law, Sovereign fully complied with all applicable statutory and regulatory requirements relating to its Placard Notices. Accordingly, the Amended Complaint should be dismissed in its entirety.

## II.   PLAINTIFFS' ALLEGATIONS[6]

The bulk of the Amended Complaint consists of nothing more than a recitation of the EFTA and its implementing regulations. *See* Amended Complaint, ¶¶ 1, 10, 12, 13, 14, 16 and 17. The remainder of the document is noteworthy not just for the sparseness of the actual allegations made, but also for the important allegations omitted. Among the few factual allegations made, plaintiffs assert that, on April 4, 2005, plaintiff, Maureen E. Deloreto, completed an electronic funds transfer at a Sovereign ATM in Seekonk, *id.* ¶ 8 and Ex. A, and that on April 6, 2005, plaintiff, Diane E. Horton, conducted an electronic funds transfer at a Sovereign ATM in Plainville. *Id.*, ¶ 9 and Ex. B. Neither Deloreto nor Horton were customers

---

[6]   For the limited purpose of this motion, Sovereign accepts the Amended Complaint's factual allegations as true to the extent required by the applicable authorities. *See Cooperman v. Individual, Inc.,* 171 F.3d 43, 46 (1st Cir. 1999); *U.S. v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992); *Iwata v. Intel Corp.*, 349 F.Supp.2d 135, 140 (D. Mass. 2004).

of Sovereign at the time. *Id.*, ¶¶ 4-5. Sovereign, therefore, charged each of them a Convenience Fee of $1.50 for their ATM transaction. *Id.*, ¶ 11.

The Amended Complaint challenges only the Placard Notice. *Id.*, ¶15 ("Defendant Sovereign Bank did not ***post*** a notice ***on its ATM*** that complied with 15 U.S.C. §1693 and 12 C.F.R. §205.16") (emphasis added); *see also id.*, ¶15 (a) (describing the general location of "[t]he notices" by reference to their physical location). Plaintiffs – presumably because they knew that Sovereign's Screen Notice complied with all statutory and regulatory requirements – made no allegations regarding the Screen Notice.

With respect to the Placard Notice, the entirety of Sovereign's alleged wrongdoing is described in a single paragraph. *See* Amended Complaint, ¶15. First, plaintiffs allege that the Placard Notice does not state the amount of the fee to be charged. *See* Amended Complaint, ¶15(c). Second, plaintiffs find wrongdoing in the Placard Notice's statement that a fee "may" be assessed, rather than "will" be assessed. *Id.* Finally, plaintiffs allege that the Placard Notices are not conspicuous because they are not posted in "prominent and conspicuous" locations and, further, because the color and size of the typeface utilized render the Placard Notices unreadable by the average consumer. *See* Amended Complaint, ¶¶15(a) and (b).

Incredibly, plaintiffs do not assert that they did not observe the Placard Notices prior to initiating their ATM transactions, nor do they claim that they were unable to read the notices. They do not even claim to have been surprised upon receipt of the Screen Notice informing them that Sovereign would charge a fee of $1.50 if they chose to proceed with their transaction. Of course, it comes as no surprise that the Amended Complaint fails to mention that, even after receiving the Screen Notice, plaintiffs nonetheless chose to proceed with their respective transactions.

Now, after confronting all of the notices required by the Act, choosing to proceed with their respective transactions, receiving the benefit of Sovereign's service, and suffering no discernable harm or even inconvenience in the process, plaintiffs bring this action in an effort to reap a windfall benefit entirely out of proportion to whatever imagined harm they could claim. Given the plain meaning of the EFTA and the equally plain presentation of the Placard Notices, this Court simply cannot permit such opportunistic quibbling.

### III.   ARGUMENT

#### A. Standard Of Review

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), this Court must view the facts as plead in the light most favorable to the nonmoving party. However, the Court need not "accept every allegation made by the complainant, no matter how conclusory or generalized." *U.S. v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992). "'[E]mpirically unverifiable' conclusions, not 'logically compelled, or at least supported, by the stated facts,' deserve no deference." *Id. quoting, Dartmouth Review v. Dartmouth Coll.*, 889 F.2d 13, 16 (1st Cir. 1989). A complaint should be dismissed if it fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997) *quoting, Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988). Since the Amended Complaint consists almost entirely of unverifiable conclusions that are insufficient to sustain a recovery under the EFTA, this Court should grant Sovereign's motion to dismiss.

#### B. Plaintiffs Misread Or Misapply The EFTA.

Plaintiffs ground three of their four arguments on either a misreading or a misapplication of the EFTA. As to these three arguments, it is clear that under any reasonable reading of the

Act, "no relief could be granted, under any theory, under any set of facts that could be proved consistent with the allegations." *Vicarelli v. Bus. Int'l, Inc.*, 973 F. Supp. 241, 243 (D. Mass. 1997) (Lindsay, J.) *quoting, Kiely v. Raytheon Co.*, 105 F.3d 734, 735 (1st Cir. 1997). Accordingly, to the extent that any of those arguments form the basis for the Amended Complaint, it should be dismissed.

### 1. The Placard Notice Is Not Required To State The Amount Of The Convenience Fee.

To the extent plaintiffs ground the Amended Complaint on an allegation that Sovereign violated the EFTA because the Placard Notice failed to state the amount of the Convenience Fee, their claims must be dismissed because the Act contains no such requirement. Even a cursory review of the EFTA reveals that the Act contemplates two different types of notices – one disclosing that a fee may be charged, and a second notice disclosing its amount. The Act also specifies that the requisite notices will be provided in two different formats – one by way of a physical placard posted at or near the ATM itself and a second via an "on screen" display.

In particular, Section 1693b (d)(3) provides:

> (3) Fee disclosures at automated teller machines
>
> (A) In general
>
> The regulations prescribed under paragraph (1) shall require any automated teller machine operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice in accordance with subparagraph (B) to the consumer (at the time the service is provided) of--
>
> (i) *the fact that a fee is imposed by such operator for providing the service*; and
>
> (ii) *the amount of any such fee*.
>
> (B) Notice requirements
>
> (i) *On the machine*

> ***The notice required under clause (i) of subparagraph (A)*** with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.
>
> (ii) ***On the screen***
>
> ***The notice required under clauses (i) and (ii) of subparagraph (A)*** with respect to any fee described in such subparagraph shall appear on the screen of the automated teller machine, or on a paper notice issued from such machine, after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction, except that during the period beginning on November 12, 1999, and ending on December 31, 2004, this clause shall not apply to any automated teller machine that lacks the technical capability to disclose the notice on the screen or to issue a paper notice after the transaction is initiated and before the consumer is irrevocably committed to completing the transaction.

15 U.S.C. §1693b (d)(3) (emphases added); *compare,* 12 C.F.R. §205.16 (b)(1) *with* 12 C.F.R. §205.16 (b)(2), and 12 C.F.R. §205.16 (c)(1) with 12 C.F.R. §205.16 (c)(2).

Plaintiffs complain that the Placard Notice referenced in Section 1693b (d)(3)(B)(i) fails to disclose the amount of the fee. However, as Section 1693b (d)(3)(B)(i) itself provides, the Placard Notice need not contain this information. Only "***[t]he notice required under clause (i) of subparagraph (A)***" – *i.e.,* "that a fee is imposed by [the ATM] operator for providing the service" – must be set forth in the Placard Notice. *See* 15 U.S.C. §1693b (d)(3)(A)(i); *see also,* 12 C.F.R. §205.16 (c) (1) (requiring the placard to provide notice only that "a fee will be imposed for providing electronic fund transfer services or a balance inquiry"). In their review of the Act, plaintiffs apparently failed to discern that ***only*** the Screen Notice referenced in Section 1693b (d)(3)(B)(ii) is required to state the ***amount*** of the fee to be charged. *See also,* 12 C.F.R. §205.16 (c)(2) (requiring that the "screen" notice disclose that a fee "will be imposed" and that such notice also "[d]isclose the amount of the fee").

Inasmuch as the Amended Complaint focuses exclusively on alleged deficiencies in the Placard Notice and since both the EFTA and its implementing regulations do not require that the Placard Notice make any disclosure regarding the amount of the fee to be charged, the first reed in plaintiffs' argument crumbles when confronted with the plain language of the Act. Therefore, to the extent they are grounded on this argument, the plaintiffs' claims must be dismissed.

### 2. Sovereign's Use Of The Word "May" Comports With The EFTA.

Plaintiffs' efforts to import into the EFTA statutory scheme a requirement that Sovereign employ the word "will" in its Placard Notice are manufactured out of whole cloth and should be rejected. The Act simply contains no such requirement. Moreover, in a recent proposed clarification of Regulation E, the Federal Review Board explained that use of the word "will" in connection with EFTA disclosures could actually result in factual inaccuracies. Therefore, the Federal Reserve reiterated its pre-existing view that use of the word "may" in EFTA disclosures fulfills the statutory mandate.

Of course, "[i]n a case that requires construction of a federal statute, the first question a court must ask is whether the statute's meaning is plainly stated in its words. If the words are a clear expression of congressional intent, the inquiry need go no further." *Chatman v. Gentle Dental Center of Waltham*, 973 F.Supp. 228, 238 (D. Mass. 1997) (Lindsay, J.); *see also Stein v. Smith*, 270 F.Supp.2d 157, 170 (D. Mass. 2003) (Lindsay, J.) (applying the "plain language" of ERISA). In this case, the plain language of the EFTA requires nothing more than disclosure by "any [ATM] operator who imposes a fee on any consumer for providing host transfer services to such consumer to provide notice ... to the consumer (at the time the service is provided) of ... the fact that a fee *is* imposed by such operator for providing the service." 15 U.S.C. §1693b

(d)(3)(A)(i) (emphasis added). The EFTA *never* mandates use of the word "will" in connection with ATM disclosures, any more than it prohibits use of the word "may."

Moreover, under the statutory framework established by Congress, the consumer encounters two notices in the process of completing an ATM transaction. The first notice – the Placard Notice – continuously alerts consumers to the possibility of a Convenience Fee before Sovereign provides any service to the consumer. The second notice – the Screen Notice – appears almost simultaneously with the consumer's request for services. When appropriate, *i.e.*, accurate, this notice includes a statement that a specific fee will be charged, and the consumer may either accept the fee and proceed or cancel the requested transaction. Thus, at "the time the service is provided," *i.e.*, when the consumer requests and immediately before she receives a transfer of funds, Sovereign provides the required information in the Screen Notice.

Even assuming for the sake of argument that the consumer confronted the Placard Notice at the time that service was provided, plaintiffs' argument still fails. Reduced to simplest terms, plaintiffs seek to convert the EFTA's use of the word "is" into a statutory imperative. Court's looking for support for plaintiffs' interpretation of the Act would expect to find evidence of a Congressional intent to create such an imperative in the words of the statute itself. Not so here. Nothing in the Act requires Sovereign to employ the word "will" in its Placard Notice.

"Courts must presume that a legislature says in a statute what it means and means in a statute what it says there. When the words of a statute are unambiguous, then, this first canon is also the last: judicial inquiry is complete." *In re Hart*, 328 F3d 45, 49 (1st Cir. 2003) (interpretation of bankruptcy exemption statute) *quoting Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 461-62 (2002). Moreover courts should not read into the statute words that are not there. *See, e.g., U.S. v. Winnett*, 2003 WL 21488645 at 3 (D.Mass. 2003) ("courts are also wary

BOS_486984_5/JGARDNER

of reading more into a statute than was intended by the legislature"); *United States v. Pitrone*, 115 F.3d 1 (1st Cir. 1997); see also See 2A Norman J. Singer, *Sutherland Statutory Construction* §46.06 (6th ed. 2000) ("While every word of a statute must be presumed to have been used for a purpose , it is also the case that every word excluded from a statute must be presumed to have been excluded for a purpose"). When Congress intends to compel private parties to employ specific language in a notice, it knows how to do so. For example, the federal Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* ("TILA"), contain such a specific mandate. There, Congress intended that "creditors make disclosure using certain exact words (*e.g.*, "annual percentage rate" and "finance charge") which the statute places in quotes and carefully defines. The TILA provision even goes so far as to prescribe the exact *form* this disclosure must take. *See* 15 U.S.C. § 1632. No comparable words or precise instructions appear in the EFTA. The contrast between these two laws, TILA and the EFTA, is striking. If Congress had intended to mandate the use of the any particular words in the EFTA, it clearly knew how to do so yet, it did not. That omission is all the more significant, given that the EFTA was patterned on TILA. *See Johnson v. West Suburban Bank*, 225 F.3d 366, 378 (3d Cir. 2000). In short, since Congress declined to require use of the word "will" in the Placard Notice, this Court should decline to impose such a requirement.

Moreover, the argument implicit in plaintiffs' effort to read the word "will" into the notice provisions of the Act suffers from a fundamental flaw. The word "is" - as employed in the Act - does not constitute a command as to whether the charging bank must or may act in a particular way. Rather it is – and such comports with the plain meaning of the term "is" – nothing more than a mandate that notice be provided only in those instances where a particular condition, *i.e.* the charging of a fee, exists. Put another way, the word "is" is not an instruction;

it is simply a reference to the state of affairs, as they exist. As the Supreme Court of Rhode Island explained in *Interstate Navigation Co. v. Div. of Pub. Util. and Carriers of the State of R.I.*, 824 A.2d 1282, 1289 (R.I. 2003), "[t]he word 'is' is defined as '[t]he third person singular present indicative of the verb be. * * * In its present state; as it stands.'" *Id.* citing, *American Heritage Dictionary of the English Language* 693 (10th ed. 1981). *cf. Clendening v. Ind. Family and Social Ser. Admin.*, 715 N.E. 2d 903, 906 (Ind. Ct. App. 1999) (a change of statutory language from "*shall be* cause" to "*is* cause" had no effect on the mandatory versus the conditional nature of imperative; substitution merely changed the verb tense of "be" from the future tense to the present tense).

Interpreting the Act's use of the word "is" to mandate notice when the specified condition exists yields this simple proposition: If the fee *is* charged, then notice must be given. Conversely, though, if the fee *is not* charged, notice need not be provided. Indeed, giving consumers notice that a fee will be charged when it will not, would be inaccurate and misleading, if not an outright misrepresentation. In short, plaintiffs interpret the EFTA to require Sovereign to lie to consumers – telling them that a fee *will* be charged when, in fact, it *may* not be. This Court should not interpret an act of Congress to yield such an illogical and irrational conclusion. *See U.S. v. Meyer*, 808 F.2d 912, 919 (1st Cir. 1987) ("it is settled beyond peradventure that legislation should be interpreted to avoid unreasonable results whenever possible") (quotations omitted); *Wagenmann v. Adams*, 829 F.2d 196, 223 (1st Cir. 1987) ("we honor the rule that a statute should be construed so as to avoid unjust or absurd results") (quotations omitted).

Even if the text of the Act was not sufficiently clear – and it is – the agency responsible for enforcing the EFTA, the Federal Reserve, has interpreted the provision at issue in light of the object and policy of the Act:

> [M]any ATM operators, particularly those owned or operated by banks, may only apply ATM surcharges to some categories of their ATM users, but not others. For example, an ATM operator might not charge a fee to cardholders whose cards are issued by the operator, cardholders of foreign banks, and cardholders whose card issuer has entered into a special contractual relationship with the ATM operator with respect to surcharges. Also, an ATM operator might charge a fee for cash withdrawals, but not for balance inquiries. *As a result, a disclosure on the ATM that a fee 'will' be imposed in all instances could be overbroad and misleading with respect to consumers who would not be assessed a fee for usage of the ATM.*

*Electronic Fund Transfers*, 69 Fed. Reg. 55996, 56005 (Sept. 17, 2004) (emphasis added).[7]

Moreover, the Federal Reserve is presently proposing a change to Regulation E that explicitly discredits the semantic machination plaintiffs attempt to exploit here. *Id.* Notably, however, the

---

[7]   Given the language of the Act and the Federal Reserve's position as reflected in 69 Fed. Reg. 55996, 56005, it is not surprising that on its website, the American Bankers Association also adopts the "may" approach to ATM disclosures:

**Disclosure of ATM Fees**

Q. How must the Automated Teller Machine (ATM) disclosures of charges be provided to the customer to comply with the Gramm-Leach-Bliley Act (GLBA)?

**Disclosure of ATM:**

A. On the machine
1. The fact that a fee *may be imposed* for fund transfers or balance inquiry.
B. On the screen or on a proper notice
1. That a fee will be imposed and the amount of any fee.
2. Disclosure must be provided before the customer becomes obligated.
C. Exception for older ATMs lacking the ability for screen notice.

Note:  Most ATMs already provide the required disclosures pursuant to ATM network rules.

See http://www.aba.com/Industry+Issues/August2001_Questions.htm (August 1, 2003) (emphasis added).

Federal Reserve views that revision as nothing more that a clarification of the existing rule, and not as a wholesale change of policy:

> ***Under section 904(d)(3)(A) of the EFTA and § 205.16(b)(1), an ATM operator must provide notice that a fee will be imposed only if a fee is, in fact, imposed.*** A strict requirement to post a notice that a fee will be imposed in all circumstanced could result in an inaccurate disclosure of the ATM operators' surcharge practices. Accordingly, comment 205.16(b)(1)-1 would be ***revised to clarify*** that if there are circumstances in which an ATM surcharge will not be charged for a particular transaction, ATM operators may disclose on the ATM signage that a fee may be imposed or may specify the type of EFTs or consumers for which a fee is imposed. ATM operators that charge a fee in all circumstances would still be required to disclose that a fee will be charged for the transaction.

*Id.* (emphases added).

An agency's interpretation of a statute that it is charged with administering is entitled to deference. *See Regions Hosp. v. Shalala,* 522 U.S. 448, 457, 118 S.Ct. 909, 915, 139 L.Ed.2d 895 (1998) ("If the agency's reading fills a gap or defines a term in a reasonable way in light of the Legislature's design, we give that reading controlling weight, even if it is not the answer the court would have reached if the question initially had arisen in a judicial proceeding") (quotations omitted). An agency's interpretation of its own regulation is entitled to an even higher degree of deference. *See Johnson v. Watts Regulator Co.,* 63 F.3d 1129, 1135 (1st Cir. 1995) ("the respect usually accorded an agency's interpretation of a statute is magnified since the agency is interpreting its own regulation"); *Sierra Club v. Larson,* 2 F.3d 462, 468 (1st Cir. 1993) ("The Supreme Court has told us that in construing a statute the courts should ordinarily show a measure of deference to the agency charged with administering the statute."); *Mass. Inst. of Tech. v. Mass. Dept. of Pub. Util.,* 941 F.Supp. 233, 237 n.2 (D. Mass. 1996) (Lindsay, J.) (an agency's interpretation of its own regulations should be accorded deference unless clearly erroneous even where the court is not in the usual *Chevron* posture of reviewing the

reasonableness of an agency determination on appeal). Accordingly, this Court should defer to the Federal Reserve Board's interpretation of 15 U.S.C. §1693b (d)(3)(A) and 12 C.F.R. §205.16(b)(1).

In this case, Sovereign's use of the word "may" undeniably comports with the EFTA and the enabling regulations. Sovereign does not know whether a fee "will" be charged until a customer actually inserts her card into the ATM. At that point, Sovereign can inform the customer, using the Screen Notice, whether a fee will be charged, and precisely how much any fee will be. Given the plain language of the Act and the unequivocal interpretation of the Federal Reserve Board interpreting the relevant statute and regulations in a manner consistent with Sovereign's use of the word "may" in the Placard Notice, the Amended Complaint should be dismissed to the extent that it is grounded on the allegation that Sovereign improperly employed the word "may" rather than the word "will" in its Placard Notices.

### 3. Plaintiffs Fail To State A Claim With Respect To The Content Of Sovereign's Placard Notices.

Plaintiffs misconstrue the Act's "prominent and conspicuous" requirement. The Placard Notice need only be placed "in a prominent and conspicuous *location* on or at the automated teller machine ... " 15 U.S.C. §1993b (d)(3)(B)(i) (emphasis added). *See* 12 C.F.R. §205.16 (c)(1). The conspicuousness requirement thus regulates the notice's location, not its content. As such, plaintiffs' allegations as to the type size, color, and language employed on the Placard Notice are of no legal moment. Matters relating to typeface, color, or even the language employed are not implicated by the "conspicuous location" standard.

Moreover, plaintiffs have made no allegations – nor could they – that Sovereign violated the standard that actually governs the language used in its notices. The Act states that notices "shall be in readily understandable language." 15 U.S.C. §1693c(a). In addition,

BOS_486984_5/JGARDNER

12 C.F.R. §205.4 says that no specific wording is required so long as the disclosures is "clear and readily understandable." 12 C.F.R. §205.4. The regulations also provide that a "financial institution may use commonly accepted and readily understandable abbreviations" and "may include additional information and may combine disclosures required by other laws" with the disclosures required by the EFTA. 12 C.F.R. §205.4.

Nowhere in the Amended Complaint do plaintiffs allege that the language employed in the notice was not "readily understandable," nor do they ever reference the statutory or regulatory provisions that govern the content of notices. Plaintiffs make no allegations that they, or anyone else, had any difficulty whatsoever understanding the language. Finally, even if plaintiffs had brought a claim questioning the language and type employed in the Placard Notice, this phantom claim would nonetheless fail because the language Sovereign employed in its Placard Notices is undeniably clear and readily understandable under any reasonable interpretation of that phrase.

Under Section 1993b, the issue, pure and simple, is whether Sovereign posted the Placard Notices in a prominent and conspicuous *location*. Accordingly, the Amended Complaint's allegations dealing with the content of the Placard Notice cannot support a claim under the conspicuousness requirement, and to the extent that plaintiffs base the Amended Complaint on such claims, it should be dismissed.

### C. No Reasonable Fact Finder Could Conclude That The Placard Notices At Issue Were Not Posted At A Conspicuous Location.

"[I]n judging the adequacy of a plaintiff's allegations, bald assertions [and] unsubstantiated conclusions ... carry no weight." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997) (quotations omitted); *see also, CCBN.Com, Inc. v. Thomson Fin., Inc.*, 270 F. Supp.2d 146, 154 (D. Mass. 2003) ("plaintiffs must do more than assert conclusory allegations"). In this

case, plaintiffs' allegations concerning the location of the Placard Notices consist of nothing more than the type of "bald assertions" and "unsubstantiated conclusions" that carry no weight. Thus, this Court need not defer to plaintiffs' wholly conclusory assertion that the Placard Notices were not placed in a prominent and conspicuous location. Amended Complaint ¶15(a).

The plaintiffs never alleged, nor could they, that the locations of the Placard Notices at issue are not reasonably calculated to impart information. In fact, the plaintiffs do not even allege that they experienced any difficulty whatsoever locating the notices. Plaintiffs' do claim that "**on most machines** [the notices] appear underneath several advertisements and notices." *See Amended Complaint*, ¶ 15 (emphasis added). However, the fact that Sovereign's EFTA notices may appear along with other disclosures is inconsequential. The statute requires only that the notices be placed in a **location** that is conspicuous.

Photographs of the Placard Notices at the ATM locations referenced in the Amended Complaint and their surroundings are attached to this Memorandum as Exhibits A through O,[8]

---

[8] This Court may properly consider Sovereign's exhibits in support of this motion to dismiss because plaintiffs put the Notices and their surroundings at issue by baldly asserting that Sovereign failed to post the Notices in a prominent and conspicuous location. In order to properly support that assertion, plaintiffs could have – and should have – appended photographs of the Placard Notices and their surroundings. Plaintiffs cannot avoid a motion to dismiss by the simple expedient of failing to attach photographs of the allegedly inconspicuous notices. For example, in *Knievel v. ESPN, Inc.*, 223 F. Supp.2d 1173, 1176 (D. Mont. 2002), on a motion to dismiss, the Court considered photographs of images from an allegedly defamatory website. Similarly, in *Sechler v. State Coll. Area Sch. Dist.*, 121 F. Supp.2d 439, 442 (M.D. Pa. 2000), the Court allowed the defendant to rely on photographs of a holiday display which were not – but could have been – attached to the complaint. *Cf., Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993) ("documents the authenticity of which are not disputed by the parties" may properly be considered on motion to dismiss without converting the motion into one for summary judgment). Like the photographs in *Knievel* and *Sechler*, the images on which Sovereign relies depict items that are central to plaintiffs' claims. Plaintiffs cannot question the authenticity of the photographs inasmuch as an affidavit by the photographer as to the photographs' authenticity is attached as Exhibit P. Nor can the plaintiffs claim any unfair surprise or prejudice by having the Court actually see the very notices and ATM sites that form the core of their claims.

and even the most cursory view of the site photographs reveals that Sovereign posted the Placard Notices in prominent and conspicuous places. The Placard Notice at the drive up ATM at both the Seekonk and Plainville locations is directly to the left of the ATM, such that a customer driving up to the ATM must necessarily confront the notice before beginning a transaction. *See* Exhibits D, E, L, and M. Likewise, the Placard Notice at the walkup location at the Seekonk site is located directly to the left of the ATM, where no reasonable person could fail to observe it before using the ATM. *See* Exhibit A. In the Plainville walkup ATM, Sovereign placed the Placard Notice on the only available wall space in the small ATM room. *See* Exhibits H and I. Although posted on the wall opposite the ATM machine, given the very small size of the room in which the Plainville ATM is located, no reasonable person could enter the room without observing the Placard Notice posted on the wall. In short, at each location, Sovereign posted Placard Notices in places where consumers were reasonably likely to observe them. *See Nicolai v. Trustmark Ins. Co.*, 97 C 5659, 1998 WL 292384, at *3 (N.D. Ill. May 20, 1998) (employment notice posted "conspicuously" where it "is in a centrally located area where employees are likely to see it"); *Keitz v. Lever Bros. Co.*, 563 F. Supp. 230, 235 (N.D. Ind. 1983) (notice is conspicuously located so long as its location provides a party a "meaningful opportunity to learn of their [] rights"); *U.S. v. Strakoff*, 719 F.2d 1307, 1309 (5th Cir. 1983) ("within the meaning of a statute relating to the posting of notices, a 'conspicuous place' means one which is reasonably calculated to impart the information in question"), *quoting* Black's Law Dictionary 382 (rev. 5th ed. 1979). In fact, given their locations in relationship to the ATMs in Seekonk and Plainville, there exists no possible way that a reasonable customer could avoid seeing the Placard Notices.

---

Accordingly, this Court should consider Sovereign's photographs without converting the pending motion to dismiss to a motion for summary judgment.

The law cannot require more. Accordingly, insomuch as the plaintiffs ground the Amended Complaint on a claim that Sovereign failed to post Placard Notices in conspicuous or prominent locations at its Seekonk and Plainville facilities, the Amended Complaint should be dismissed.

## IV.   CONCLUSION

This Court should dismiss the Amended Complaint because: (1) nothing in the EFTA or the relevant regulations requires Sovereign to state the amount of the ATM convenience fee on the Placard Notice; (2) as a matter of law, Sovereign's use of the word "may" rather than "will" in its Placard Notice fully complies with the requirements of the Act and the operative regulations; (3) the EFTA's "prominent and conspicuous" requirement applies only to the location of the Placard Notice, not to the style of presentation or content; and (4) no reasonable fact finder could conclude that the Placard Notices posted by Sovereign were not prominent and conspicuous within the meaning of the ETFA. Since no relief can be granted under any theory or set of facts that could be proved consistent with the allegations of the Amended Complaint, it should be dismissed.

SOVEREIGN BANK
By its attorneys,

Dated: July 1, 2005

*/s/ John A. Houlihan*

John A. Houlihan (B.B.O. #542038)
Donald E. Frechette (B.B.O. #547293)
Joshua W. Gardner (B.B.O. #657347)
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, MA 02110-1800
(617) 439-4444 Telephone
(617) 439-4170 Telecopy

### CERTIFICATE OF SERVICE

I, John A. Houlihan, certify that on this 1st day of July, 2005, I caused a copy of this document to be served, via first class mail, postage prepaid, on the following counsel of record:

| | |
|---|---|
| Christopher M. Lefebvre | Daniel A. Edelman |
| Claude Lefebvre, P.C. | Edelman, Combs, |
| Two Dexter Street | Latturner & Goodwin, LLC |
| Pawtucket, RI 02860 | 120 S. LaSalle St., 18th Floor |
| | Chicago, IL 60603 |

*/s/ John A. Houlihan*
John A. Houlihan

BOS_486984_5/JGARDNER