**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MAUREEN E. DELORETO and<br>DIANE E. HORTON,<br><br>Plaintiffs,<br><br>v.<br><br>SOVEREIGN BANK,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

C. A. NO. 05-CV-10712 RCL

**DEFENDANT SOVEREIGN BANK'S REPLY MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS**

In their response to Sovereign's motion to dismiss, plaintiffs concede that the EFTA[1] does not require Placard Notices to state the amount of the ATM Convenience Fee. They also agree that the EFTA permits Placard Notices to state that a Convenience Fee "may" – as opposed to "will" – be charged if under some circumstances the bank does not charge the fee. Plaintiffs failed to address in any meaningful way Sovereign's argument that the EFTA's conspicuous requirement applies only to the location of the Placard Notices and not to their content, and as plaintiffs' own Response makes plain, the allegations as to the conspicuousness of Sovereign's Placard Notices fail to state a valid claim for relief. For these reasons and for the reasons discussed in Sovereign's memorandum in support of its motion to dismiss, this Court should dismiss the Amended Complaint.

---

[1] Capitalized terms have the same meaning attributed to them in Sovereign's memorandum in support of motion to dismiss.

## ARGUMENT

### A.     Plaintiffs Concede That The Placard Notice
### Need Not State The Amount Of The Convenience Fee.

Confronted with the clear language of the Act, plaintiffs "concede that the notice on the outside of the machine does not have to state the dollar amount of the fee." Plaintiffs' Response, at 3 n.2. Accordingly, to the extent that plaintiffs ground the Amended Complaint on the allegation that Sovereign did not state the amount of the Convenience Fee on the Placard Notice, plaintiffs' claims must be dismissed.

### B.     The EFTA Permits the Placard Notice
### Wording Employed by Sovereign.

Nowhere, in either their pleadings or their Response, do plaintiffs suggest that the combination of Sovereign's Placard Notice and its Screen Notice failed to achieve the statutory directive to "provide notice ... to the consumer (at the time the service is provided) of ... the fact that a fee is imposed ... for providing the service." 15 U.S.C. §1693b(d)(3)(A)(i). Plaintiffs never argue – because they cannot – that the notices employed by Sovereign failed to bring the Convenience fee to their attention or somehow left them confused as to whether or not Sovereign would charge their accounts in connection with the transactions that they initiated after receiving Sovereign's dual notices. Accordingly, plaintiffs' reliance on *Burns v. First Am. Bank*, No. 04 C 7682, 2005 WL 1126904 (N.D. Ill. Apr. 28, 2005) is misplaced. In *Burns*, the Court addressed contradictory disclosures where the Placard Notice indicated that a $2.00 fee would be charged, while the screen notice stated that a $2.50 fee would be charged. *Id.* at *1. Confronted with facially inconsistent notices, the *Burns* Court ruled that the issue of whether the contradictory notices created confusion and rendered the disclosures unclear was a question of fact. *Id.* at *5. However, plaintiffs made no such allegations in this case, and the *Burns* Court never addressed

BOS_498944_5/JHOULIHAN

the "may" versus "will" and conspicuousness issues that lie at the heart of this case. Therefore, the *Burns* decision has no application here.

With respect to the "may" versus "will" issue, plaintiffs implicitly acknowledge that Sovereign's Placard Notice employing the word "may" complies with the EFTA as long as a fee is not always imposed for cash transactions. Plaintiffs now simply argue that "if Sovereign chooses to refer to cash withdrawals in its notices, and Sovereign always imposes a fee on non-customers for cash withdrawals, Sovereign's notice must inform consumers of the fact that a fee will be imposed." Plaintiffs' Response, at 5.

Plaintiffs apparently agree that if Sovereign does not always charge a Convenience Fee for cash withdrawal transactions, use of the word "may" on the Placard Notice is appropriate.[2] In fact, Sovereign does not always charge non-Sovereign U.S. cardholders a Convenience Fee for cash withdrawal transactions. Therefore, this Court should accept plaintiffs' invitation to convert the pending motion to dismiss to a motion for summary judgment, and schedule a Rule 16 Conference for the purpose of establishing the narrow parameters of an initial discovery schedule to focus on establishing those circumstances under which Sovereign does not charge a Convenience Fee to non-Sovereign cardholders for cash withdrawal transactions. Ultimately, Sovereign will necessarily prevail because after such limited and focused discovery as the Court might permit, the undisputed facts will show that in some instances Sovereign does not charge a Convenience Fee to non-Sovereign cardholders for cash withdrawal transactions.

---

[2]     This is precisely the position adopted by the Federal Reserve in its proposed amendment to Regulation E. A copy of the Federal Reserve's August 19, 2005 Press Release and the text of the proposed Amended Regulation are attached to the reply memorandum as Exhibits Q and R respectively.

### C.     The Conspicuousness Standard Regulates Location Not Content.

Plaintiffs fail to respond to Sovereign's argument that the "prominent and conspicuous" requirement regulates the location of the Placard Notices and not their content. *See* Sovereign's Memo, at 15-16.  Rather than respond to Sovereign's argument, plaintiffs resort to mischaracterizing Sovereign's position as somehow arguing "that the content of the notices does not matter" and that miniscule notices in Sandskrit would suffice. *See* Plaintiffs' Response, at 8. That is not Sovereign's argument at all.  Content does matter, and a Sandskrit notice would violate a statute – 15 U.S.C. § 1693c(a) – but not the statute under which plaintiffs brought this suit.[3]

The Amended Complaint asserts a violation of 15 U.S.C. §1693b, and under that section of the Act, the issue is whether Sovereign posted the Placard Notices in a prominent and conspicuous location.  Accordingly, the Amended Complaint's allegations relating to the content of the Placard Notices fail to state a claim and should be dismissed.

### D.     The "Questions Of Fact" To Which Plaintiffs Refer Are Irrelevant.

Plaintiffs fail to respond to the bulk of Sovereign's arguments and case law regarding the conspicuousness of the Placard Notices.  Instead, Plaintiffs attempt to survive Sovereign's motion to dismiss by conjuring up issues of fact where none exist.  For example, plaintiffs profess a desire to present evidence that the vast majority of ATM operators attach their notices directly to the machine and that Sovereign could have placed its Placard Notices on its machines. *See* Plaintiffs' Response, at 8.  However, these supposed factual disputes are in no way determinative of the issues in this case.  Even if every other bank attached Placard Notices to their ATM machines and the parties' respective experts all agreed that Sovereign could attach

---

[3]     If at some point plaintiffs bring claims regarding the content of the Placard Notices under the correct statute, applying the correct standard, Sovereign will respond appropriately.

Placard Notices to its machines, plaintiffs' Amended Complaint would still fail to state a valid claim because the EFTA expressly allows for notices to be placed near the ATMs as well as on the machines.

Section 1693b(d)(3)(B)(i) states that the Placard Notice "shall be posted in a prominent and conspicuous location on or at the automated teller machine." 15 U.S.C. 1693b(d)(3)(B)(i). The word "at" must mean something more than "on." Otherwise, as plaintiffs read the statute, the word becomes redundant and entirely superfluous. Employing the plain meaning of "at" yields the common sense conclusion that banks may post their Placard Notices at prominent and conspicuous locations "on" or "near by" their ATM machines. Plaintiffs do not and cannot allege that Sovereign did not post its Placard Notices "nearby" its ATMs. Thus, even if resolved in plaintiffs' favor, the supposed factual issues on which plaintiffs rely would fail to sustain a claim.

### E.    No Reasonable Fact Finder Could Conclude That The Placard Notices Were Not Posted at Conspicuous Locations.

In their Amended Complaint and again in their Response, plaintiffs rely on three statements regarding conspicuousness. First, plaintiffs claim that "[t]he notices are not in a prominent and conspicuous location." *See* Amended Complaint, ¶15(a); and Response, at 7. Second, they assert that "[o]n most machines they [the Placard Notices] appear underneath several advertisements and notices." *Id.* Finally, plaintiffs complain that "... numerous notices and advertisements are often located on a wall off to the side of the machine." *Id.*

Plaintiffs first proposition is entirely circular and conclusory. Plaintiffs argue that this Court should conclude that the Placard Notices are not conspicuous simply because plaintiffs allege that the Notices are not conspicuous. Fortunately, "in judging the adequacy of a plaintiff's allegations, bald assertions [and] unsubstantiated conclusions ... carry no weight." *Berner v.*

*Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997) (quotations omitted); *see Educadores Puertorrique Nos En Acci On v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004). Therefore, as a matter of law, the first basis of plaintiffs' position cannot sustain a claim for relief.

Similarly, even if true, the second and third assertions also fail to support a claim because the EFTA allows for the Placard Notice to be placed alongside other notices. As the applicable regulations expressly provide, banks "may include additional information and may combine disclosures required by other laws" with the disclosures required by the *EFTA*. 12 C.F.R. § 205.4. *See also, Nicolai v. Trustmark Ins. Co.*, No. 97 C 5659, 1998 WL 292384 (N.D. Ill. May 20, 1998) (employee notice placed alongside other notices behind glass on a bulletin board ruled to be in a conspicuous location). Moreover, the fact that the Placard Notices appear in close proximity to private advertising supports the conclusion that Sovereign placed the Placard Notices in conspicuous locations. After all, private advertising would be of little or no value if it was placed at an inconspicuous location. Finally, as previously explained, the allegation that Sovereign's notices are located on a wall, rather than on the ATM machine itself, cannot support an alleged violation of the Act because the EFTA clearly allows for the posting of notices "at" rather than "on" the ATM machine. *See* 15 U.S.C. § 1693b(d)(3)(B)(i).

In short, plaintiffs make no allegation that, if proven, would support a claim under the EFTA's conspicuous requirement. Where "the allegations are such that the plaintiff can prove no set of facts to support the claim for relief," dismissal is appropriate. *Edes v. Verizon Communications, Inc.*, No. 03-2162, 2005 WL 1805123, at *2 (1st Cir. Aug. 2, 2005) (quotations omitted). This is such a case.

### F.    This Court May Consider the Photographs of the ATMs Submitted by Sovereign.

The courts of this circuit have long recognized that "[w]hen the factual allegations of a complaint revolve around a document whose authenticity is unchallenged, that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Young v. Lepone*, 305 F.3d 1, 11 (1st Cir. 2002), *quoting Beddall v. State St. Bank & Trust Co.* 137 F.3d 12, 17 (1st Cir. 1988). The rationale underlying this rule makes perfect sense. Where a document is central to the allegations of a complaint, the plaintiff cannot avoid dismissal by the simply expedient of not attaching the document to the complaint. As recognized in *Knievel v. ESPN, Inc.*, 223 F. Supp.2d 1173, 1176 (D. Mont. 2002) and *Sechler v. State Coll. Area Sch. Dist.*, 121 F. Supp.2d 439, 442 (M.D. Pa. 2000), the same rationale applies to photographs.

Plaintiffs allege that the location of the Placard Notices is not conspicuous, but they offer not one allegation that describes the location of the Placard Notices. Moreover, they go to great lengths to convince this Court not to consider photographs of the very notices they characterize as inconspicuous. However, it is beyond reasonable debate that Sovereign's photographs provide meaning and context for plaintiffs' conclusory allegations. In this regard Sovereign's photographs cannot be distinguished from the letters at issue in *Young*. The letters, which the *Young* plaintiffs referenced in their complaint were an integral part of the pleadings. Just so, in this case plaintiffs claim that Sovereign failed to place the Placard Notices in a conspicuous location. That central allegation has meaning only when the Court considers the Placard Notices

BOS_498944_5/JHOULIHAN

in relationship to their surroundings. In order to do so, this Court must and therefore should consider Sovereign's photographs. [4]

Ironically, if plaintiffs employed in their Amended Complaint any measure of the specificity which Sovereign employed in its Placard Notices, it would not be necessary to append photographs to Sovereign's motion to dismiss. Unfortunately, plaintiffs seek to hide from this Court the very foundation of their case – the location and setting of the Placard Notices. That effort speaks volumes about the merits of their claims. As the *Sechler* court explained, considering key documents and objects "prevent[s] a plaintiff from avoiding proper dismissal by simply failing to attach to the complaint a dispositive document on which it relied." *Sechler* 121 F. Supp. at 442. That is precisely what plaintiffs hope to achieve here – to survive a motion to dismiss based on an entirely conclusory statement of the central element of their case. This Court should not permit that strategy to prevail, particularly where as argued in Sovereign's motion to dismiss, no reasonable fact finder could look at Sovereign's Placard Notices and conclude that they are anything but in a conspicuous location.

## CONCLUSION

This court should dismiss the Amended Complaint in its entirety because: (1) plaintiffs concede that the EFTA does not require Placard Notices to state the amount of the ATM convenience fee; (2) the EFTA's conspicuous requirement applies only to the location of the

---

[4]    Sovereign's photographs are indisputably authentic. Plaintiffs' contrived objections to the authenticity of the photographs are so disingenuous as to border on silliness, and accordingly, this Court should give them no weight. For example, plaintiffs complain that the "affidavit provides no information regarding the scale of the photos, or as to whether or not the photos are actual size." Plaintiffs' Response, at 6. It seems self-evident, however, that the 8.5 inch by 11 inch photographs of ATM machines are not "actual size." Likewise, both the "scale" of the photographs and the "position" from which they were taken are readily apparent from the photographs themselves and the various objects that appear in them. In addition, plaintiffs' arguments regarding the absence of a car do not concern authenticity and are nonsensical.

BOS_498944_5/JHOULIHAN

Placard Notices and not to their content; and (3) plaintiffs' allegations as to the conspicuousness of Sovereign's Placard Notices fail to state a claim for relief.

SOVEREIGN BANK
By its attorneys,

Dated: August 22, 2005

/s/ John A. Houlihan
John A. Houlihan (B.B.O. #542038)
Donald E. Frechette (B.B.O. #547293)
Joshua W. Gardner (B.B.O. #657347)
EDWARDS & ANGELL, LLP
101 Federal Street
Boston, MA 02110-1800
(617) 439-4444  Telephone
(617) 439-4170  Telecopy

## CERTIFICATE OF SERVICE

I, John A. Houlihan, certify that on this 22nd day of August, 2005, I caused a copy of this document to be served, via first class mail, postage prepaid, on the following counsel of record:

Christopher M. Lefebvre
Claude Lefebvre, P.C.
Two Dexter Street
Pawtucket, RI  02860

Daniel A. Edelman
Edelman, Combs,
Latturner & Goodwin, LLC
120 S. LaSalle St., 18th Floor
Chicago, IL  60603

/s/ John A. Houlihan
John A. Houlihan

BOS_498944_5/JHOULIHAN

# EXHIBIT Q

Federal Reserve Release



EXHIBIT Q

# Press Release

*Release Date: August 19, 2005*

For immediate release

The Federal Reserve Board on Friday published proposed amendments to Regulation E, which implements the Electronic Fund Transfer Act, and to the regulation's official staff commentary that clarify the disclosure obligations of automated teller machine (ATM) operators with respect to fees imposed on a consumer for initiating an electronic fund transfer or a balance inquiry at an ATM. The commentary interprets the requirements of Regulation E to facilitate compliance primarily by financial institutions that offer electronic fund transfer services to consumers.

Currently, the regulation provides that an ATM operator that charges a fee for initiating an electronic fund transfer or balance inquiry must post notices at ATMs that a fee will be imposed. The proposed revisions would clarify the intent of the rule that ATM operators can satisfy the requirement by providing a notice that a fee "may" be imposed if there are circumstances under which some consumers would not be charged for services. ATM operators must continue to provide the consumer with a separate notice, either on the screen of the ATM or on paper, that a fee will be imposed and the amount of the fee, before the consumer is committed to paying a fee.

The Board is continuing to consider other issues that were addressed in its proposed September 2004 update to Regulation E.

The Federal Register notice is attached. Comments are due on or before October 7, 2005.

Attachment (176 KB PDF)

2005 Banking and consumer regulatory policy

Home | News and events
Accessibility
**Last update: August 19, 2005**

**EXHIBIT R**

EXHIBIT R

**FEDERAL RESERVE SYSTEM**

**12 CFR Part 205**

**[Regulation E; Docket No. R-1234]**

**Electronic Fund Transfers**

**AGENCY:**  Board of Governors of the Federal Reserve System.

**ACTION:**  Proposed rule; official staff interpretation.

---

**SUMMARY:**  The Board is publishing for comment a proposal to amend Regulation E, which implements the Electronic Fund Transfer Act (EFTA).  The proposal would also revise the official staff commentary to the regulation.  The commentary interprets the requirements of Regulation E to facilitate compliance primarily by financial institutions that offer electronic fund transfer services to consumers.

The proposed revisions would clarify the disclosure obligations of automated teller machine (ATM) operators with respect to fees imposed on a consumer for initiating an electronic fund transfer or a balance inquiry at an ATM.  The Board is withdrawing previously proposed revisions to the Regulation E staff commentary that would have addressed this issue.

**DATES:**  Comments must be received on or before October 7, 2005.

**ADDRESSES:**  You may submit comments, identified by Docket No. R-1234, by any of the following methods:

- Agency Web Site:  http://www.federalreserve.gov.  Follow the instructions for submitting comments at http://www.federalreserve.gov/generalinfo/foia/ProposedRegs.cfm.

- Federal eRulemaking Portal:  http://www.regulations.gov.  Follow the instructions for submitting comments.

- E-mail:  regs.comments@federalreserve.gov.  Include docket number in the subject line of the message.

- FAX:  202/452-3819 or 202/452-3102.

- Mail:  Jennifer J. Johnson, Secretary, Board of Governors of the Federal Reserve

System, 20th Street and Constitution Avenue, N.W., Washington, DC 20551.

All public comments are available from the Board's web site at www.federalreserve.gov/generalinfo/foia/ProposedRegs.cfm as submitted, unless modified for technical reasons. Accordingly, your comments will not be edited to remove any identifying or contact information. Public comments may also be viewed electronically or in paper in Room MP-500 of the Board's Martin Building (20th and C Streets, N.W.) between 9:00 a.m. and 5:00 p.m. on weekdays.

**FOR FURTHER INFORMATION CONTACT:** Ky Tran-Trong, Senior Attorney, or Daniel G. Lonergan, David A. Stein, Natalie E. Taylor or John C. Wood, Counsels, Division of Consumer and Community Affairs, Board of Governors of the Federal Reserve System, Washington, D.C. 20551, at (202) 452-2412 or (202) 452-3667. For users of Telecommunications Device for the Deaf (TDD) only, contact (202) 263-4869.

**SUPPLEMENTARY INFORMATION:**

**I. Background**

The Electronic Fund Transfer Act (EFTA or Act) (15 U.S.C. 1693 et seq.), enacted in 1978, establishes the rights, liabilities, and responsibilities of participants in electronic fund transfer (EFT) systems. The Board's Regulation E (12 CFR part 205) implements the EFTA. Examples of types of transfers covered by the Act and regulation include transfers initiated through an automated teller machine (ATM), point-of-sale (POS) terminal, automated clearinghouse (ACH), telephone bill-payment plan, or remote banking service. The Act and regulation require disclosure of terms and conditions of an EFT service; documentation of electronic transfers by means of terminal receipts and periodic account activity statements; limitations on consumer liability for unauthorized transfers; procedures for error resolution; and certain rights related to preauthorized EFTs.

The Official Staff Commentary (12 CFR part 205 (Supp. I)) is designed to facilitate compliance and provide protection from liability under sections 915 and 916 of the EFTA for financial institutions and persons subject to the Act. 15 U.S.C. 1593m(d)(1). The commentary is updated periodically, as necessary, to address significant questions that arise.

**II. Summary of Proposed Revisions**

Section 205.16 provides that an ATM operator that imposes a fee on a consumer for initiating an EFT or a balance inquiry must post notices at ATMs that a fee will be imposed. Section 205.16(b) would be revised to clarify the operation of the ATM signage rule when fees are not imposed by the ATM operator on all consumers. The revised language specifically clarifies the intent of the rule that ATM operators may provide a notice that a fee may be imposed if there are circumstances in which an ATM fee will not be charged for a particular transaction, such as where the card has been issued by a foreign bank or the card issuer has entered into a contractual relationship with the ATM operator regarding surcharges.

2

Section 205.16 does not require that any sign be posted if no fee is charged to the consumer by the ATM operator. The rule is intended to allow consumers to identify immediately ATMs that generally charge a fee for use. It is not intended to represent a complete disclosure to the consumer regarding the fees associated with the particular type of transaction the consumer seeks to conduct. Rather, a more detailed disclosure of whether in fact a fee will be charged for the type of transaction contemplated by the consumer and the amount of the fee is required to be made either on the ATM screen or on an ATM receipt before the transaction is completed. See § 205.16(c).

## III. Section-by-Section Analysis of the Proposed Revisions

### Section 205.16 Disclosures at Automated Teller Machines

Under section 904(d) of the EFTA, as amended by the Gramm-Leach-Bliley Act of 1999 (GLB Act), an ATM operator that imposes a fee on any consumer for providing EFT services is required to provide notice of the fee to the consumer in a prominent and conspicuous location on or at the ATM on which the EFT is initiated.[2] An ATM operator is any person who operates an ATM at which consumers initiate an EFT or a balance inquiry, and that does not hold the account to or from which the transfer is made, or about which an inquiry is made. See EFTA
§ 904(d)(3)(D)(i); § 205.16(a). In addition to posting notice of the fee on or at the ATM, the ATM operator must also disclose that a fee will be imposed and the amount of the fee, either on the screen of the ATM or on a paper notice, before the consumer is committed to completing the transaction. These requirements are implemented in § 205.16 of Regulation E. See 66 FR 13409 (March 6, 2001).

Several large institutions have asked whether it is permissible under § 205.16 to provide notice on the ATM that a fee "may be" charged for providing EFT services, because many ATM operators, in particular those owned or operated by banks, apply ATM surcharges to some categories of their ATM users, but not others. For example, an ATM operator might not charge a fee to cardholders of foreign banks, cardholders whose card issuer has entered into a special contractual relationship with the ATM operator with respect to surcharges, and persons who carry cards that are issued under electronic benefit transfer governmental programs. (While many financial institutions do not impose ATM surcharges on their own cardholders, they are not ATM operators with respect to those cardholders for purposes of § 205.16 because the institutions hold the cardholders' accounts.) Also, an ATM operator might charge a fee for cash withdrawals, but not for balance inquiries. As a result, a disclosure on the ATM that a fee "will" be imposed in all instances could be overly broad with respect to consumers who would not be assessed a fee for usage of the ATM.

In September 2004, as part of an update to Regulation E, the Board proposed to revise comment 205.16(b)(1)-1 to clarify that ATM operators may disclose on the ATM signage that a fee may be imposed or may specify the type of EFTs or consumers for which a fee is imposed,

---

[2] Pub. L. No. 106-102, § 702, 113 Stat. 1338, 1463-64 (1999).

if there are circumstances in which an ATM surcharge will not be charged for a particular transaction. See 69 FR 55996, 56005 (September 17, 2004). The Board's proposal acknowledged that a strict requirement to post a notice that a fee will be imposed in all instances could result in an inaccurate disclosure of the ATM operators' surcharge practices and is not mandated by the current language in § 205.16.

Industry commenters overwhelmingly agreed with the Board's proposal, stating that the proposed staff commentary was consistent with sections 904(d)(3)(A) and (B) of the EFTA, and would help ATM operators more accurately disclose their surcharging practices. Industry commenters cited a press release issued by the original act's sponsor, Rep. Marge Roukema, stating that the act "simply puts existing practice into law."[3] According to these commenters, the common practice of many banks at the time of the ATM surcharge amendments was to state that a fee <u>may</u> be imposed.

Consumer groups believed that a general statement on ATM signage that a fee "may" be imposed could significantly weaken consumer notice, and that the current staff commentary permitting ATM operators to specify the type of EFTs for which a fee is imposed provides sufficient flexibility to address concerns about overbroad ATM signage disclosures. A consumer rights attorney stated that a disclosure that an ATM fee "may" be imposed is too general to be useful, and further asserted that the Congress intended that ATM signs must state that a fee will be charged whenever there is a possibility that a surcharge will be imposed on any consumer. This commenter believed that section 904(d) of the EFTA did not provide a basis for ATM operators to avoid providing notice on ATM signage to consumers to whom a fee would be imposed even if some consumers would not have a fee imposed or if there are other transactions for which a fee would not be imposed. The commenter also challenged industry commenters' characterizations regarding common industry practice at the time the amendments were adopted, stating that existing practice of many ATM operators at the time was to post signs on the machines stating that a fee <u>will</u> be imposed for cash withdrawals.

The Board continues to believe that a literal interpretation of the current rule could lead to overly broad disclosures of an ATM operator's surcharge practices where some consumers would not be assessed a fee for usage of the ATM, and that a reasonable interpretation of the statute and regulation would allow ATM operators to provide an alternative disclosure that a fee "may" be imposed to avoid potential consumer confusion. Upon further analysis and after consideration of the comments received, however, the Board believes it would be appropriate to make this clarification in the regulation rather than in the commentary. Therefore, the Board is withdrawing its proposed commentary revisions addressing this issue and is instead proposing to exercise its authority under § 904(a) of the EFTA to amend both the regulation and the commentary. A re-proposal allows the Board to elicit additional comments to better understand ATM disclosure practices, both at the time of the passage of the GLB Act and currently.

As proposed, § 205.16(b) would be revised to explicitly clarify that ATM operators may disclose in all cases that a fee will be imposed, or in the alternative, disclose that a fee may be

---

[3] Banking Committee OKs Roukema ATM Fee Disclosure (March 10, 1999), http://financialservices.house.gov/banking/31099rou.htm.

4

imposed on consumers initiating an EFT or a balance inquiry if there are circumstances under which some consumers would not be charged for such services. Before an ATM operator may impose an ATM fee on a consumer for initiating an electronic fund transfer or a balance inquiry, the ATM operator must provide to the consumer notice, either on-screen or via paper receipt, that an ATM fee will be imposed and the amount of the fee, and the consumer must elect to continue the transaction or inquiry after receiving such notice. See § 205.16(e). Comment 16(b)(1)-1 would be revised to reflect the proposed rule, and to clarify that ATM operators that impose an ATM surcharge in all cases must provide notice on the ATM signage that a fee will be charged.

Comment is solicited on the current disclosure practices of ATM operators that impose surcharges on some, but not all, consumers. Under what types of circumstances might an ATM operator not impose a surcharge for providing electronic transfer services or responding to balance inquiries? If surcharges are not imposed on all consumers, how do ATM operators disclose their surcharge practices? What adverse impact on consumers, if any, might result from a disclosure that states that an ATM surcharge will be imposed when the operator's practice is not to impose a surcharge on certain consumers? Conversely, what adverse impact on consumers who are charged an ATM fee, if any, might result if ATM signage states that a fee may be imposed? In addition, comment is solicited on disclosure practices of ATM operators with respect to surcharges at the time the GLB Act was passed.

### IV. Form of Comment Letters

Comment letters should refer to Docket No. R-1234 and, when possible, should use a standard typeface with a font size of 10 or 12; this will enable the Board to convert text submitted in paper form to machine-readable form through electronic scanning, and will facilitate automated retrieval of comments for review. Comments may be mailed electronically to regs.comments@federalreserve.gov.

### V. Solicitation of Comments Regarding the Use of "Plain Language"
Section 722 of the Gramm-Leach-Bliley Act of 1999 requires the Board to use "plain language" in all proposed and final rules published after January 1, 2000. The Board invites comments on whether the proposed rules are clearly stated and effectively organized, and how the Board might make the proposed text easier to understand.

### VI. Initial Regulatory Flexibility Analysis

In accordance with section 3(a) of the Regulatory Flexibility Act, the Board has reviewed the proposed amendments to Regulation E. A final regulatory flexibility analysis will be conducted after consideration of comments received during the public comment period.

1. Statement of the objectives of the proposal. The Board is proposing revisions to Regulation E to allow ATM operators flexibility to disclose that ATM surcharges will or may be imposed on consumers initiating an EFT or a balance inquiry when there are circumstances under which such surcharges will not be charged.

The EFTA was enacted to provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund transfer systems. The primary objective of the EFTA is the provision of individual consumer rights. 15 U.S.C. 1693. The EFTA and Regulation E require disclosure of terms and conditions of an EFT service; documentation of electronic transfers by means of terminal receipts and periodic statements; limitations on consumer liability for unauthorized transfers; procedures for error resolution; and certain rights related to preauthorized EFTs. The Act and regulation also prescribe restrictions on the unsolicited issuance of ATM cards and other access devices. The EFTA authorizes the Board to prescribe regulations to carry out the purpose and provisions of the statute. 15 U.S.C. 1693b(a). The Act expressly states that the Board's regulations may contain "such classifications, differentiations, or other provisions, . . . as, in the judgment of the Board, are necessary or proper to carry out the purposes of [the Act], to prevent circumvention or evasion [of the act], or to facilitate compliance [with the Act]." 15 U.S.C. 1693b(c). The Act also states that "[i]f electronic fund transfer services are made available to consumers by a person other than a financial institution holding a consumer's account, the Board shall by regulation assure that the disclosures, protections, responsibilities, and remedies created by [the Act] are made applicable to such persons and services." 15 U.S.C. 1693b(d). The Board believes that the proposed revisions to Regulation E discussed above are within the Congress' broad grant of authority to the Board to adopt provisions that carry out the purposes of the statute.

2. Small entities affected by the proposal. The number of small entities affected by this proposal is unknown. ATM operators that do not impose ATM surcharges in all instances would be permitted to disclose that surcharges may be disclosed on signage appearing on ATMs. ATM operators that choose to make the proposed alternative disclosure may have to revise their signs on their ATMs.

3. Other federal rules. The Board believes no federal rules duplicate, overlap, or conflict with the proposed revisions to Regulation E.

4. Significant alternatives to the proposed revisions. The Board welcomes comment on any significant alternatives that would minimize the impact of the proposed rule on small entities.

## VII. Paperwork Reduction Act

In accordance with the Paperwork Reduction Act (PRA) of 1995 (44 U.S.C. 3506; 5 CFR 1320 Appendix A.1), the Board reviewed the proposed rule under the authority delegated to the Board by the Office of Management and Budget (OMB). The proposed rule contains requirements subject to the PRA. The collection of information that is required by this proposed rule is found in 12 CFR 205.16(c) and in Appendix A. The Federal Reserve may not conduct or sponsor, and an organization is not required to respond to, this information collection unless it displays a currently valid OMB control number. The OMB control number is 7100-0200. This information is required to obtain a benefit for consumers and is mandatory (15 U.S.C. 1693 et seq.). The respondents/recordkeepers are for-profit financial institutions, including small businesses. Institutions are required to retain records for 24 months.

All depository institutions, of which there are approximately 19,300, potentially are affected by this collection of information because all depository institutions are potential ATM operators subject to Regulation E and are required to provide notice to consumers of an ATM surcharge, and thus are respondents for purposes of the PRA. However, the extent to which this collection of information affects a particular depository institution depends on the number of ATMs an institution operates.

The proposed revision is not expected to significantly increase the ongoing annual burden of Regulation E; rather this would be a one-time burden increase for those institutions that, although not required, decide to revise their ATM signage disclosures. For purposes of the PRA, the Federal Reserve estimates that it would take depository institutions, on average, 8 hours (one business day) to revise and update ATM signage; therefore, the Federal Reserve estimates that the total annual burden for all depository institutions for this requirement would be 154,400 hours. With respect to the 1,289 Federal Reserve-regulated institutions which must comply with Regulation E, it is estimated that the total annual burden for this requirement would be 10,312 hours.

The preceding estimate represents an average across all respondents and reflect variations between institutions based on their size, complexity, and practices. The other federal agencies are responsible for estimating and reporting to OMB the total paperwork burden for the institutions for which they have administrative enforcement authority. They may, but are not required to, use the Federal Reserve's burden estimates.

Because the records would be maintained at state member banks and the notices are not provided to the Federal Reserve, no issue of confidentiality arises under the Freedom of Information Act.

Comments are invited on: a. whether the proposed collection of information is necessary for the proper performance of the Federal Reserve's functions; including whether the information has practical utility; b. the accuracy of the Federal Reserve's estimate of the burden of the proposed information collection, including the cost of compliance; c. ways to enhance the quality, utility, and clarity of the information to be collected; and d. ways to minimize the burden of information collection on respondents, including through the use of automated collection techniques or other forms of information technology. Comments on the collection of information should be sent to Michelle Long, Federal Reserve Board Clearance Officer, Division of Research and Statistics, Mail Stop 41, Board of Governors of the Federal Reserve System, Washington, DC 20551, with copies of such comments sent to the Office of Management and Budget, Paperwork Reduction Project (7100-0200), Washington, DC 20503.

**Text of Proposed Revisions**

Certain conventions have been used to highlight the proposed changes to the text of the regulation and staff commentary. New language is shown inside bold-faced arrows, while language that would be deleted is set off with bold-faced brackets. Comments are numbered to comply with **Federal Register** publication rules.

**List of Subjects in 12 CFR Part 205**

Consumer protection, Electronic fund transfers, Federal Reserve System, Reporting and recordkeeping requirements.

For the reasons set forth in the preamble, the Board proposes to amend 12 CFR part 205 and the Official Staff Commentary, as follows:

**PART 205 – ELECTRONIC FUND TRANSFERS (REGULATION E)**

1. The authority citation for part 205 would continue to read as follows:

**Authority**: 15 U.S.C. 1693b.

2. Section 205.16 would be amended by republishing paragraph (b) and revising paragraph (c)(1) as follows:

**§ 205.16 Disclosures on Automated Teller Machines**

* * * * *

(b) <u>General</u>. An automated teller machine operator that imposes a fee on a consumer for initiating an electronic fund transfer or a balance inquiry shall –

(1) provide notice that a fee will be imposed for providing electronic fund transfer services or a balance inquiry; and

(2) disclose the amount of the fee.

(c) <u>Notice requirement</u>. An automated teller machine operator must comply with the following:

(1) <u>On the machine</u>. Post [the notice required by paragraph (b)(1) of this section] in a prominent and conspicuous location on or at the automated teller machine▶ a notice that:

(i) A fee will be imposed for providing electronic fund transfer services or a balance inquiry; or

(ii) A fee may be imposed for providing electronic fund transfer services or a balance inquiry, but this notice may be substituted only if there are circumstances under which a fee will not be imposed for such services◀; and

(2) <u>Screen or paper notice</u>. Provide the notice required by paragraphs (b)(1) and (b)(2) of this section either by showing it on the screen of the automated teller machine or by providing it on paper, before the consumer is committed to paying a fee.

8

2. In Supplement I to Part 205, under <u>Section 205.16 – Disclosures at Automated Teller Machines</u>, under <u>16(b) General</u>, under Paragraph 16(b)(1), paragraph 1. would be revised.

## SUPPLEMENT I TO PART 205 – OFFICIAL STAFF INTERPRETATIONS

* * * * *

Section 205.16 – Disclosures on Automated Teller Machines

1. <u>Specific notices</u>.  An ATM operator that imposes a fee for a specific type of transaction▶--◀ such as ▶for◀ a cash withdrawal, but not ▶for ◀a balance inquiry, ▶or for some cash withdrawals (such as where the card was issued by a foreign bank or by a card issuer that has entered into a special contractual relationship with the ATM operator regarding surcharges), but not for others --◀ may provide a general [statement] ▶notice ◀on or at the ATM machine◀ that a fee will ▶or may ◀be imposed for providing EFT services or may specify the type of EFT for which a fee is imposed.  ▶  If, however, a fee will be imposed in all instances, the notice must state that a fee will be imposed.◀

* * * * *

By order of the Board of Governors of the Federal Reserve System, August 19, 2005.


Robert deV. Frierson   (signed)
Robert deV. Frierson
Deputy Secretary of the Board