**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MAUREEN E. DELORETO and<br>DIANE E. HORTON,<br><br>        Plaintiffs,<br><br>        v.<br><br>SOVEREIGN BANK,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)   C.A. No. 05 CV 10712 RCL<br>)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiffs, Maureen Deloreto and Diane Horton, respond as follows in opposition to defendant Sovereign Bank's motion for summary judgment.

**I.     INTRODUCTION**

Congress has provided certain requirements for notifying consumers of any fees that will be charged in connection with using automatic teller machines ("ATMs"). 15 U.S.C. §§1693 *et seq.* ("the EFTA"). Those rules require that ATM operators post a "prominent and conspicuous" notice on or at their machines informing consumers that a fee will be imposed for certain transactions. Plaintiffs, who were not Sovereign customers, withdrew money from Sovereign's ATMs, and were charged a fee for doing so. Plaintiffs filed suit against Sovereign alleging that Sovereign's ATM fee notices were not prominent and conspicuous, used the wrong wording, and hence violated the EFTA.   Sovereign has moved for summary judgment on the grounds that its notices were located in a prominent and conspicuous location, and that the wording of the notices complied with the EFTA.

## II.   STATEMENT OF FACTS

In April 2005, plaintiffs, who are not customers of Sovereign, withdrew money from Sovereign drive-up ATMs in Seekonk and Plainville, Massachusetts. The required fee notices at the machines in question appeared on a two by four inch white notice on a placard underneath several color logos of various credit cards and ATM networks. (Defendant's Statement of Material Facts ("Def. SMF"), ¶¶17, 18, 25, 26, 36, 37, 46, 47)  The placards were located on a wall between two and four feet from the ATM screen (Def. SMF ¶¶15, 20, 34, 39), and they could not be seen by plaintiffs when they were parked in a position where they could use the ATM. (Deposition of Maureen Deloreto[1] ("Deloreto Dep.") pp. 40-41, Affidavit of Maureen Deloreto[2] ("Deloreto Aff."), ¶¶5,6, Affidavit of Diane Horton[3] ("Horton Aff."), ¶¶5-6), Deposition of Diane Horton (Horton Dep.)[4] pp. 34, 47-49)  The notices could not be easily read by the average consumer using the ATM, especially a consumer in a vehicle, whose attention is focused on pulling up to the right position to use the ATM. (Deloreto Dep. pp. 40-44, Horton Aff. ¶6, Horton Dep. pp. 48-49, Deposition of

---

[1] The deposition of Maureen Deloreto is contained in Appendix 4 of the Appendix volume to Plaintiffs' Response to Defendant's Statement of Material Facts. All other appendices are also included in that same appendix volume.

[2] The Affidavit of Maureen Deloreto is contained in Appendix 3 of the Appendix volume to Plaintiffs' Response to Defendant's Statement of Material Facts.

[3] The affidavit of Diane Horton is contained in Appendix 2 of the Appendix volume to Plaintiffs' Response to Defendant's Statement of Material Facts.

[4] The deposition of Diane Horton is contained in Appendix 11 of the Appendix volume to Plaintiffs' Response to Defendant's Statement of Material Facts.

Rhiannon Hernandez[5] ("Hernandez Dep."), 32-33, 36, Report of Marc Green, PhD.[6] ("Green Report"), pp. 3-5)  In order to see the fee notices, a consumer would have to put his or her car in reverse, back up two to four feet and look down, which would not even be possible if another vehicle was behind them. (Deloreto Aff. ¶6)  Pictures taken of the plaintiffs using the ATMs make it clear that the signs are not visible to a customer using the ATM: the Plainville notice lines up with the back door of Ms. Horton's car, and the Seekonk notice is blocked by the ATM cabinet wall, which juts out from the building. (Exhibits 1-6 to the Affidavit of Neville Bedford)

   The fee notices at the walk-up ATMs were located on slightly different sized placards, which were otherwise the same as the drive-up placards. (Appendices B & J to Def. SMF) In Plainville, the placard containing the fee notice is located across the room from the ATM (Def. SMF, ¶49), and in Seekonk, the placard is located in between two walk-up ATMs.  Neither placard can be seen by someone standing facing the ATM screen. (Hernandez Dep. p. 26, Deloreto Aff. ¶8, Deposition of Stephanie Comeau ("Comeau Dep.")[7] p. 64, Horton Aff. ¶9)

   Moreover, the notices do not state that a fee will definitely be charged.  Instead they provide: "Sovereign Bank may charge a fee to US cardholders for withdrawing cash. This fee is added to the amount of your withdrawal by Sovereign Bank and is in addition to any fees that may

---

[5] The deposition of Rhiannon Hernandez is contained in Appendix 5 of the Appendix volume to Plaintiffs' Response to Defendant's Statement of Material Facts.

[6] The Declaration of Marc Green, PhD. is contained in Appendix 6 of the Appendix volume to Plaintiffs' Response to Defendant's Statement of Material Facts. Marc Green's curriculum vitae is contained in Appendix 7 to the Appendix volume to Plaintiffs' Response to Defendant's Statement of Material Facts.

[7] The deposition of Stephanie Comeau is contained in Appendix 5 to the Appendix volume to Plaintiffs' Response to Defendant's Statement of Material Facts.

be charged by your financial institution. This Convenience Fee does not apply to Sovereign Bank Cardholders." (Def. SMF, ¶7)

### III. STANDARD OF REVIEW

Under Fed.R.Civ.P. 56, summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Leon v. Municipality of San Juan, 320 F.3d 69, 71 (1st Cir. 2003). All reasonable inferences must be drawn in the light most favorable to the nonmoving party. Paparo v. M/V Eternity, 433 F.3d 169, 172 (1st Cir. 2006).

### IV. SOVEREIGN'S FEE NOTICES WERE NOT IN PROMINENT AND CONSPICUOUS LOCATIONS.

Sovereign is asking this Court to take the extraordinary step of granting summary judgment where the record (as illustrated below) is replete with material factual disputes. Sovereign attempts to defend its placement of the fee notices in distant, and unusual locations, on the grounds that the notices were in locations "reasonably calculated" to impart the required information. Sovereign offers no evidence relating to what "calculations" went into the placement of the signs, but instead offers affidavits from two branch managers who had nothing to do with the placement of the signs, and were unfamiliar with EFTA regulations. (Hernandez Dep. pp. 18-21, Comeau Dep. pp. 57-59) Neither branch manager was even interviewed before they were sent attorney drafted affidavits to sign, and both affiants gave deposition testimony which contradicted key allegations in their affidavits. For example, although Ms. Hernandez signed an affidavit which provides that "I can see and read the Convenience Fee notice while sitting in the driver's seat of my car" when

it is parked so that the driver is directly in front of the ATM (¶14 of Appendix U to Def. SMF), she admitted at her deposition that a customer would not be able to read the notice when in a vehicle in a position to use the ATM. (Hernandez Dep. pp. 32-33)

Moreover, the standard Sovereign is attempting to use improperly turns the issue of whether the fee notices are in prominent and conspicuous locations into an issue of Sovereign's intent – based on "reasonable calculations." Nothing in the statute provides for or justifies such a standard. Instead, whether the fee notices were in a prominent and conspicuous location should be judged by an objective, scientific standard.

Plaintiffs, contrary to Sovereign's claims, have alleged that the fee notices were not reasonably calculated to be noticed, and have submitted evidence to support those allegations, including their own testimony, that of Sovereign's affiants, photographs, and a report by their expert, Dr. Marc Green. That evidence clearly creates a disputed issue of material fact. In addition, the joint video and pictures also support plaintiffs' allegations. Ms. Deloreto states that she did not see the Seekonk drive-up notice panel until it was pointed out to her (Deloreto Aff. ¶4), and that neither the drive-up or walk-up notice panels were visible when actually using the ATMs. (Deloreto Aff. ¶¶5, 6) Ms. Horton stated that the notice panels were not visible from either the drive-up or the walk-up ATMs. (Horton Aff. ¶¶5, 6, 7, 9, Horton Dep. pp. 34, 47-49, 59) Plaintiffs' expert, Marc Green, has also submitted an affidavit explaining what criteria should be used to determine if a sign is prominent or conspicuous, namely that scientific evidence regarding where the notices are located in an ATM user's visual field, taking into account likely viewer behavior and sight lines. (Green Report. p. 3)

Sovereign has cited cases involving the posting of employment related notices in

support of its theory that its notices are posted in prominent and conspicuous locations. It is questionable whether such a case provides any guidance to the issue at hand in this case, since a noncustomer ATM user is very different from an employee who normally spends extensive periods of time in his place of employment. As the Court noted in one such case, there is a distinct standard for determining whether an employment notice is in a conspicuous location -- the notice is conspicuous if it "is in a centrally located area where employees are likely to see it." <u>Nicolai v. Trustmark Insurance</u>, 1998 U.S. Dist. LEXIS 12178, *9-10 (N.D.Ill.).[8]

In the present case, on the other hand, the EFTA requires that the fee notices be "on or at" the ATMs, not that they be "centrally located." Sovereign's notices, which are posted several feet before the drive-up ATMs, are not "on or at" the machines. Sovereign also contends that the notices do not have to be "on" the machines, because otherwise the word "at" in the statute would be redundant. Sovereign is wrong. Some ATMs may be too small to attach a sign to, in which case the sign can be "at" the machine. "At" is defined as being "on, in, by or near" by Webster's Dictionary. In any event, plaintiffs do not contend that the sign must absolutely be "on" the machine to comply with the statute, but the sign should be either on the machine, especially where there is room, or directly adjacent to the machine in order to be "prominent and conspicuous." In this case, the pictures demonstrate that (1) Sovereign had room to put other notices and advertisements directly on the ATMs in question, and (2) the cabinets holding the ATMs also had sufficient room for a fee notice, so there is no reason the fee notices could not also have been placed there

---

[8] Even if the employment notice standard applied here, it would not be met, for as plaintiffs' expert has concluded, the ATM fee notices are not likely to be seen by ATM users. (Green Report. p. 5)

The Seekonk drive-up ATM contains logos for several types of credit/debit cards. A small orange sticker appears below the logos, and a larger orange sticker appears below that. There is empty space on the other side of the ATM, and on the sides of the wall which protrude around the ATM. There is also ample space on the surface of the compartment which holds the ATM. The fact that the ATM does protrude from the wall several inches makes it even harder to see the fee notice which is attached to the bank wall four feet before the ATM. There is no reason the fee notice could not have been placed on the ATM itself or on the compartment holding the ATM. Instead, the two by four inch sign is posted almost four feet from the ATM screen. The Plainville ATM has slightly less space, but still has empty space on both the ATM and the compartment wall which protrudes around the ATM.

Sovereign contends that its notices comply with the statute, even if there was room to put them on the actual machines, so long as the notices are "nearby." In the first place, plaintiffs submit that at the very least there is a question of fact about whether the notices, especially the Seekonk drive-up and the Plainville walk-up notices, are "nearby." In the second, there has to be some limit on how far away a sign can be to still qualify as being in a "prominent and conspicuous location." Surely Sovereign does not contend that a sign placed "nearby" but across the street is in a prominent and conspicuous location. A notice which is not visible to a person using the ATM is not prominent and conspicuous. A notice which is not visible is by definition not likely to be seen, and hence not in a prominent and conspicuous location.

Perhaps Sovereign would have a point if there were no available space on or close enough to the ATM to be seen, but the pictures and video make it clear that there is space for a notice both on and immediately adjacent to the machines within the user's visual field. The Seekonk

drive-up ATM has plenty of open space for the two by four inch fee notice, including underneath the six bank notices Sovereign managed to fit on the machine without any trouble, and on the gray cabinet containing the ATM. (Appendix E to Def. SMF) The Seekonk walk-up ATM has even more free space on the machine, and on the cabinet surrounding the ATM.[9] (Appendix A to Def. SMF). The Plainville walk-up machine has extra space on the machine and the cabinet surrounding machine, not to mention the wall containing the machine. Sovereign had room for a large sign regarding opening new accounts on that same wall; how can it argue that the only place it could fit the two by four inch fee notice was on the opposite wall?

In short, there is plenty of room on or immediately adjacent to each machine for the two by four inch fee notice, so Sovereign cannot contend that it was somehow forced to place the notices between two and four feet from the ATMs, or on the opposite wall due to a lack of space. Sovereign also cannot contend, in good faith, that two by four inch notices located between two feet and four feet from the machines, which cannot be seen, much less read, by an ATM user, were "reasonably calculated" to be seen. Nor can Sovereign contend, in good faith, that such notices are in "prominent and conspicuous" locations. At the very least there is a question of fact concerning the issue of whether the signs are located in prominent and conspicuous locations.

Sovereign further argues that the fact that the notices appear on a sign which also has advertisements insures that the notice is in a prominent location. Sovereign's contention ignores the fact that the ATM and credit card logos are such that they are visible when driving by, but the fee

---

[9] For example, as can be seen from defendant's pictures of the Plainville walk-up ATM (Appendices H and I), it is possible to attach a notice to the sections of the cabinet which protrude around the ATM.

notice, which is in small, black and white print, cannot be read while moving. In fact, Sovereign's theory is unfounded – people are much less likely to notice a printed notice when there are other objects in the visual field competing for their attention, especially large colored bank symbols. (Green Report p. 4)[10]

Sovereign also contends that "no reasonable person" could enter the Plainville vestibule without seeing the notice. However, a reasonable person would expect the notice to be on or near the machine, as they are at most other banks, and would not read the small print on the sign on the other side of the room. (Green Report, pp. 4-5) A customer intending to use an ATM machine has his or her attention focused on the machine, not on a wall across the room containing a sign which appears to be an advertisement. (Id.)

In summary, plaintiffs have plainly established that a disputed issue of material fact exists with respect to the issue of whether Sovereign's fee notices were placed in prominent and conspicuous locations. This Court must therefore deny Sovereign's unfounded motion for summary judgment.

V.   **THE ISSUE OF WHETHER PLAINTIFFS CAN CHALLENGE FEE NOTICES AT ATMS THEY DID NOT USE SHOULD BE ADDRESSED IN CONNECTION WITH CLASS CERTIFICATION**.

Sovereign argues that plaintiffs only have "standing" to challenge the drive-up ATMs which they actually used. Sovereign's argument ignores the fact that plaintiffs have brought this case as a class action on behalf of other non-Sovereign customers who used Sovereign's ATMs.

---

[10] Dr. Green's conclusion is bolstered by Ms. Deloreto's testimony. When asked why she didn't notice the fee notice on the placard containing the bank symbols, Ms. Deloreto stated that, "I had no reason to be reading an advertisement and that's basically what I felt it was . . ." (Deloreto Dep. pp. 36-37)

Plaintiffs suggest that the real issue is not whether plaintiffs have "standing" to challenge other ATMs, but whether people who used other ATMs can properly be included in the class definition, and that issue should be addressed at the class certification stage. Meyer v. CUNA Mutual Group, 2006 U.S.Dist. LEXIS 4478, *38-39 (W.D.Pa. Jan. 25, 2006) (explaining the relationship between constitutional standing and Rule 23 requirements); Osgood v. Harrah's Entertainment, Inc., 202 F.R.D. 115, 120-121 (D.N.J. 2001) ("Accordingly, a plaintiff who meets individual standing requirements possesses [standing] in the constitutional sense, and whether the plaintiff may represent the rights of others depends on the application of Rule 23 tests in the case of a class action."); Senter v. General Motors Corp., 532 F.2d 511, 517 (6th Cir. 1976). HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS §§ 2.05 (3d ed.1992).

Plaintiffs' individual claims are based on the ATMs they actually used, which they clearly have standing to challenge. Moreover, in a class action, plaintiffs can also represent class members who used other ATMs, so long as their claims are typical and common questions of law and fact predominate. Amchem Products, Inc. v. Windsor, 521 U.S. 591, 613 (1997); Guckenberger v. Boston University, 957 F. Supp. 306, 325 (D.Mass. 1997) (Rule 23 does not require that class members' claims be identical.) To be typical within the meaning of Rule 23 simply requires that the claims of the named plaintiff arise from the same type of conduct which give rise to the class members' claims. Burstein v. Applied Extrusion Technologies, Inc., 153 F.R.D. 488, 491 (D.Mass. 1994); Fraser v. Major League Soccer, L.L.C., 180 F.R.D. 178, 181 (D.Mass. 1998).

Plaintiffs cited facts regarding the walk-up ATMs at Plainville and Seekonk as merely an example of other Sovereign ATMs where the signs were not in prominent and conspicuous locations, and where the fee notices were contained on the same maroon placard

containing colored bank logos, with a small two by four inch fee notice at the bottom. At class certification, plaintiffs will demonstrate that common questions predominate, in part due to the fact that Sovereign used the same placard at the majority of its ATMs, and did not put the fee notices on or immediately adjacent to the ATMs. Plaintiffs can represent other victims of the same wrongful practice as long as they suffered injury as a result of the same wrongful practice, which they did – both plaintiffs used Sovereign ATMs at which the fee notices were not posted in prominent and conspicuous locations. See, E.g., Rodriguez v. McKinney, 156 F.R.D. 112 (E.D.Pa. 1994) (students who attended one campus of a vocational school were permitted to represent a class including students that attended two other campuses); Morgan v. UPS, 380 F.3d 459 (8th Cir. 2004) (black UPS employees represented other black UPS employees nationwide, not just at their own job site).

The cases Sovereign cites regarding standing are inapposite. Lewis v. Casey, 518 U.S. 343 (1996), was a prisoner case in which the named plaintiffs had not personally suffered injury from the conduct they were challenging. In re Bank of Boston Corp. Sec. Litig., 762 F.Supp. 1525 (D.Mass. 1991) was a securities case in which the named plaintiff had not actually suffered any injury. In re Eaton Vance Corp. Sec. Lit., 219 F.R.D. 38 (D.Mass. 2003) and Stegall v. Ladner, 394 F.Supp. 2d 358 (D.Mass. 2005) were securities cases in which plaintiffs attempted to sue mutual funds from which they had never purchased any shares or conducted any business. In this case, on the other hand, plaintiffs both withdrew money from a Sovereign ATM which did not have prominent and conspicuous fee notices posted. They clearly have standing to sue over that injury.

The issue of whether plaintiffs can challenge ATMs other than the drive-up ATMs they used should therefore not be decided at the present time, and should instead be addressed in connection with class certification.

## VI. SOVEREIGN WAS REQUIRED TO INFORM CONSUMERS THAT A FEE WOULD BE IMPOSED FOR WITHDRAWALS.

Sovereign's notice states that "Sovereign Bank may charge a fee to US cardholders for withdrawing cash. This fee is added to the amount of your withdrawal by Sovereign Bank and is in addition to any fees that may be charged by your financial institution. This Convenience Fee does not apply to Sovereign Bank Cardholders." Def. SMF, ¶7.

### A. The Plain Language of the Statute Requires a Definitive Disclosure.

Sovereign contends that its notices comply with the statutory requirements because it is permitted to state that a fee "may" be charged. Sovereign contends that plaintiffs' contention that its notices must inform consumers that a fee will be charged is "pure fabrication" and claims that the statute contains no such requirements.

Contrary to Sovereign's suggestion, the statute plainly requires Sovereign to disclose that a fee will be imposed. As Sovereign acknowledges, the first rule of statutory construction is that the plain language of the statute should be applied. <u>Chatman v. Gentle Dental Center of Waltham</u>, 973 F.Supp.2d 157 (D.Mass. 1997). The statute plainly provides that the disclosures must inform the consumer of the fact that a fee is charged. 15 U.S.C. §1639b(d)(3)(A)(I). The regulations provide that an ATM operator that imposes a fee on a consumer shall: "Provide notice that a fee <u>will</u> be imposed for providing electronic fund transfer services or a balance inquiry. . ." 12 C.F.R. §205.16(b)(1) (emphasis added). As Sovereign admits, courts should presume that a legislature "says in a statute what it means and means in a statue what it says there." <u>In re Hart</u>, 328 F.3d 45, 49 (1st Cir. 2003). The statute uses language which plainly requires a definite and unambiguous disclosure that a fee will be imposed. That language should be applied, and when it is, it is clear

that Sovereign's notice is not sufficient.

### B.    The Legislative History Supports Plaintiffs' Interpretation.

Courts traditionally review the legislative history in addition to assist in determining "Congressional intent." In National Labor Relations Board v. United Food and Commercial Workers 484 U.S. 112, 123, (1987) a unanimous Supreme Court stated that: "On a pure question of statutory construction, our first job is to try to determine congressional intent, using 'traditional tools of statutory construction.' If we can do so, then that interpretation must be given effect, and the regulations at issue must be fully consistent with it." (citations omitted)  In this case, the only relevant and certainly the overwhelmingly most persuasive legislative history clearly speaks to the intention of Congress on this issue, and confirms Plaintiff's position. "[I]n surveying legislative history we have repeatedly stated that the authoritative sources for finding the Legislature's intent lies in the Committee Reports on the bill, which 'represen[t] the considered and collective understanding of those congressmen involved in drafting and studying the proposed legislation.'" Garcia v. United States 469 U.S. 70 (1984)(citations omitted).

The committee reports state ad nauseam that the 1999 amendments to the Electronic Funds Transfer Act ("the EFTA") require that banks state that a fee **will be** imposed on both notices.

**House Committee Report**:

Section 171 designates subtitle H as the 'ATM Fee Reform Act of 1999.' Section 172. Electronic fund transfer fee disclosures at any host ATM. "Section 172 amends the Electronic Funds Transfer Act (EFTA) by requiring certain disclosures regarding automated teller machine (ATM) surcharge fees…ATM operators assessing surcharges are required to (1) post a sign on the ATM machine stating that a fee **will be charged**;" Committee Report 2 of 100 - House Rpt.106-074

- Part 3 - FINANCIAL SERVICES ACT OF 1999. (emphasis provided)

**House Conference Report:**

The House Conference Report, issued on November 2, 1999, 10 days before the ATM REFORM ACT passed the Congress, and distributed to each member of the House of Representatives, states that the notice "on the machine and on the screen" must state "that a fee **will be charged**." (emphasis provided)

**Senate Banking Committee, Statement of Managers:**

The Senate Banking Committee, Statement of Managers, Summary of Major Provisions, released Monday November 1, 1999 (11 days before the REFORM ACT was enacted by the Congress) stated: "Subtitle A--ATM Fee Reform" Senate Position: The Senate bill at Title VII requires automated teller machine ("ATM") operators who impose a fee for use of an ATM by a noncustomer to post a notice on the machine and on the screen that a fee **will be charged**. (emphasis provided)

All three legislative reports unambiguously, clearly, and directly state that a notice must be posted on the machine stating that a fee "will" be imposed. The House Committee Report expressly states that notice must be posted on the ATM machine that a "fee will be charged." The House Conference Report expressly states that the *same notice* must be posted on the screen and on the machine "that a fee will be charged." The Senate Banking Committee, Statement of Managers expressly states that the ATM operator must "post a notice" on the machine and the screen "that a fee will be charged." All three reports specifically state that they are discussing the notice posted "on the machine." Thus, there is no ambiguity in the legislative history of the EFTA amendments. The legislative history unequivocally supports the plaintiffs' position that the use of the word "may"

on the signage posted at Sovereign's ATMs violates the EFTA.

### Industry Submissions in Favor of Clarification

Finally, industry submissions and publications in favor of the clarification Sovereign relies on, support plaintiffs' interpretation. For example, the submission by America's Community Bankers dated October 7, 2005 (Appendix 10, p. 1) stated: "The Federal Reserve's Regulation E implements the EFTA. Regulation E currently requires an ATM operator that charges any consumer a fee for initiating an EFT or a balance inquiry to post a notice stating that a fee will be imposed." A request for submissions by the Community Banker's Association similarly states that: "Currently the regulation provides that an ATM operator that charges a fee for initiating an electronic fund transfer or balance inquiry must post notices at ATMs that a fee will be imposed." (Appendix 9)

### C. The Amendments are Not Retroactive

Sovereign contends that this Court should apply the new Federal Reserve Board commentary to this case. However, that commentary was adopted after plaintiffs' transactions, and it conflicts with the actual language of the EFTA, and it therefore should not be followed.

### D. Sovereign Charges Noncustomers Fees in the Vast Majority of Cash Withdrawal Transactions.

Sovereign contends that if its fee notices provide that a fee will be charged, the fee notices will not be accurate because there are some circumstances in which it does not charge a fee. However, Sovereign's own statistics demonstrate that it imposed a fee in at least 92.6% of transactions by noncustomers in 2005, including noncustomers holding foreign (non-US) ATM cards who are not covered by the EFTA. The categories where a fee would not be charged are actually quite simple, and easy to disclose if Sovereign believes it must. The Morrissey v. Webster

Bank, N.A., 417 F.Supp.2d 183 (D.Mass.) case, in which 77.5 % of noncustomers were not charged a fee is therefore readily distinguishable.[11]

Some of the categories Sovereign cites involve mergers and acquisitions of other banks. At some point during the merger/acquisition process, Sovereign begins treating the target bank's customers as its own for the purposes of ATM surcharges. Plaintiff submits that these individuals are not really "noncustomers," and therefore a sign saying that noncustomers will be charged is not inaccurate. Sovereign is required to inform those customers of its plans with respect to the account pursuant to the Truth in Saving Act, and can inform them when they will begin being treated as "customers" at Sovereign ATMs in the same mailing. Barnes v. Fleet National Bank, 370 F.3d 163 (1st Cir. 2004). The Hurricane Katrina situation, while unfortunate, occurred after the plaintiffs' transactions and the relevant class period. Moreover, it was an isolated situation which could be addressed with public service announcements. In circumstances where Sovereign has an agreement regarding not charging noncustomers at a specific ATM, the sign for that particular ATM can be changed to reflect whatever Sovereign's agreement provides.

That leaves accounts funded by government electronic transfer benefits ("EBT's") as the only real category of noncustomers for whom a sign providing that a fee will be charged would be inaccurate. If Sovereign is concerned about the alleged inaccuracy, Sovereign could easily design a sign which provides that "This convenience fee does not apply to Sovereign Bank cardholders or accounts which are funded by electronic transfers of governmental benefits."

---

[11] Mohler v. Manufacturers and Traders Trust Co., 2006 WL 901639 (D.Md. March 24, 2006), which merely follows the Webster decision without analysis and without any statistics on the number of noncustomers who were charged fees, should not be followed by this Court.

-16-

Sovereign's alleged concerns about the fact that complying with the statute could cause its signs to be inaccurate are therefore unfounded, and Sovereign's motion for summary judgment should be denied.

## **CONCLUSION**

For the reasons stated above, defendant's motion for summary judgment must be denied. Plaintiffs have raised material questions of fact concerning whether the fee notices were posted in prominent and conspicuous locations, and plaintiffs have demonstrated that the wording of Sovereign's fee notices does not comply with the statute and regulations.

Respectfully submitted,


s/Cathleen M. Combs
Cathleen M. Combs (pro hac vice)
Tara L. Goodwin
EDELMAN COMBS, LATTURNER, LLC
120 South LaSalle Street, 18th Floor
Chicago, Illinois 6603
(312) 739-4200
(312) 419-0379 (FAX)


Christopher M. Lefebvre
LAW OFFICES OF CLAUDE
    LEFEBVRE & SONS
P.O. Box 479
Pawtucket, RI 02862
(401) 728-6060
(401) 728-6534 (FAX)
B.B.O. # 629056

**CERTIFICATE OF SERVICE**

       I, Cathleen M. Combs, hereby certify that on May 15, 2006, a copy of the foregoing document was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

                                                 s/Cathleen M. Combs
                                                 Cathleen M. Combs