## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MAUREEN E. DELORETO and | ) | |
| DIANE E. HORTON, | ) | |
|     Plaintiffs, | ) | |
|     v. | ) | C. A. NO. 05-CV-10712 RCL |
| | ) | |
| SOVEREIGN BANK, | ) | |
|     Defendant. | ) | |
| | ) | |

## SOVEREIGN BANK'S MEMORANDUM OF LAW IN SUPPORT OF IT'S MOTION TO STRIKE THE DECLARATION OF MARC A. GREEN

### I. INTRODUCTION

This Court should strike the declaration of Marc A. Green ("the Green Declaration") submitted in support of plaintiffs' opposition to Sovereign Bank's motion for summary judgment because the statements contained in the Green Declaration are not admissible as evidence as required by Fed. R. Civ. P. 56(e). For the most part, the Green Declaration consists of irrelevant statements, which by definition, are not "helpful" to the Court. Thus, the Green Declaration fails to satisfy the requirements of Fed. R. Evid. 402 and 702. Furthermore, to the limited extent that the Green Declaration does address relevant issues, Mr. Green's opinions do nothing more than put an expert "gloss" on matters of plain common sense. In either event, the statements contained in the Green Declaration fail to satisfy the requirements of Fed. R. Evid. 702 and therefore, should be stricken.

### II. ARGUMENT

#### A. The Applicable Standard: Fed. R. Evid. 702

Fed. R. Evid. 702 governs the admission into evidence of supposed expert testimony. It provides:

> If scientific, technical, or other specialized knowledge *will assist the trier of fact to understand the evidence or to determine a fact in issue,* a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (emphasis added). In requiring that the proposed testimony "assist" the trier of fact, Fed. R. Evid. 702 recognizes that

> [a]s a general principle, "expert evidence is not necessary . . . if all the primary facts can be accurately and intelligibly described to the jury, and if they, as [persons] of common understanding, are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training of the subject under investigation."

*Oddi v. Ford Motor Co.*, 234 F.3d 136, 159 (3d Cir. 2000), quoting *Padillas v. Stork – Gamco, Inc.*, 186 F.3d 412, 415-416 (3rd Cir. 1999). Thus, "[e]xpert testimony is more likely to be inadmissible if the inferences drawn by the expert are ones that can be, and typically are, made from common observation." *Hamilton v. Emerson Elec Co.*, 133 F.Sup.2d 360, 374 (M.D. Pa. 2001), citing 31A *Am.Jur. 2d* Expert and Opinion Evidence §43. In short, expert testimony should address subject matter "beyond the ken of the average juror." *United States v. Yevakpor,* 419 F.Supp.2d 242, 253 (N.D.N.Y. 2006), citing *United States v. Castillo*, 924 F.2d 1227, 1232 (2d Cir. 1991). Additionally, since Fed. R. Evid. 702 requires that the proffered testimony "assist" the Court or jury, the proffered testimony – at a minimum – must at least be relevant to a material issue in dispute. As the Supreme Court recognized in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993), "[e]xpert testimony which does not relate to any issue in the case is not relevant and, *ergo*, non-helpful." *Id.*, at 591.

The Green Declaration does not satisfy these standards. Accordingly, it cannot properly be considered in connection with the pending motion for summary judgment and should be stricken.

### B. The Green Declaration Is Irrelevant Because It Fails to Fails to Take the Requirements of the EFTA Into Account.

In order to be admitted into evidence, a purported expert opinion must possess some relevance to the question presented. *Id.* In this case the question presented is a simple one: Did Sovereign post its Placard Notices at prominent and conspicuous locations at or near the ATMs as required by the Electronic Funds Transfer Act, 15 U.S.C. §1693b(d)(3)(B)(i), ("EFTA" or "the Act")? Amazingly, however, Mr. Green neglected to review the pertinent portions of the EFTA in connection with his Declaration. *See* Green Declaration Exhibit A Materials Reviewed. It necessarily follows that because Mr. Green neglected to review the pertinent provisions of the EFTA, his views cannot reflect what the Act requires. Instead the Green Declaration reveals only what its author thinks that the law ought to require. While those views may be of some interest to Mr. Green's fellow academics, they cannot assist this Court in determining whether Sovereign complied with the EFTA because Mr. Green's opinions fail to account for the Act and its specific requirements.

Mr. Green's opinions notwithstanding, the EFTA states that the Placard Notice[1] "shall be posted in a prominent and conspicuous ***location on or at*** the automated teller machine." 15 U.S.C. 1693b(d)(3)(B)(i) (emphasis added). A party may describe a "***location on or at*** the automated teller machine" in several different ways. In this case, Sovereign adhered to the old adage that a picture is worth a thousand words and described the locations at issue by means of a

---

[1]    The exterior placard notice posted on or at the ATM in compliance with 15 U.S.C. §1693b(d)(3)(B)(i).

BOS_540058_2/JHOULIHAN

videotape and a series of photographs. Then, in order to avoid any suggestion that that the videotape and photographs somehow distorted reality, Sovereign supplemented the videotape and photographs with measurements intended to further and more precisely describe the "*location*" of the Placard Notices. Thus, the measurements that the Green Declaration belittles serve to supplement the photographic record and provide background detail to assist the Court in recognizing precisely where the Placard Notices are "*located*" in reference to the ATMs so that the Court may determine whether the Placard Notices are posted in a "prominent and conspicuous *location on or at* the automated teller machine," as required by the Act that the Green Declaration so blithely ignores.

Not surprisingly given his decision to avoid consideration of the requirements of the Act, Mr. Green opines that Sovereign's evidence regarding the precise location of the Placard Notices as compared to the ATMs "reveal[s] little" about the prominence and conspicuity of their location *at or near* the ATM. *See,* Green Declaration at 4. To characterize this assertion – which brings to mind the dialogue at the famous tea party in *Alice's Adventures in Wonderland* – as counter-intuitive constitutes a substantial understatement. Thankfully, however, other courts that have addressed this issue have not pursued Mr. Green down his peculiar "rabbit hole." For example in *Mohler v. Manufacturers & Traders Trust Co.*, 2006 WL 901639 (D. Md. Mar. 24, 2006), Judge Motz determined that a fee notice "on a nine inch by twenty-two inch disclosure panel that is seven inches to the right of the ATM's edge (twenty five inches from the keypad)" satisfied the "prominent and conspicuous" requirement of 15 *U.S.C.* § 1693b(d)(3)(B)(i). Mr. Green may disagree, but apparently Judge Motz believed that measurements of the kind provided by Sovereign helped to determine whether a Placard Notice is *located at or near* the ATM as required by the EFTA.

- 4 -

The Green Declaration also seeks to inject the "style" and "presentation" of the Placard Notice into the debate over its location. *See* Green Declaration at 5. Undoubtedly, this flaw also reflects Mr. Green's failure to consider the provisions of the EFTA. Suffice to say that Congress clearly and expressly viewed matters rather differently than Mr. Green. The statute at issue in this case, 15 *U.S.C.* § 1693b(d)(3)(B)(i), does not address the content of the Placard Notice but merely requires posting "in a prominent and conspicuous location on or at the automated teller machine" 15 *U.S.C.* § 1693b(d)(3)(B)(i). The content of the notice is governed by an entirely different statute, and an entirely different legal standard, neither of which has been referenced in any of the four versions of the complaint or in any of the various legal memoranda filed by the plaintiffs. *See* 15 *U.S.C.* § 1693c(a) (providing that notice "shall be in readily understandable language"); and 12 *C.F.R.* § 205.4 (notice should be "clear and understandable"). Thus, while Mr. Green may not agree with the statute, the fact remains that matters of location and matters of content are entirely distinct – at least in the view of Congress – and Mr. Green's failure or unwillingness to recognize that distinction further dooms his opinions to the dustbin of irrelevancy.

### C. Mr. Green's Opinions Should Be Excluded Because They Relate to Matters of Simple Common Sense and, As Such, Will Not "Assist" The Court.

Mr. Green, concludes his Declaration with the opinion that "most naïve[2] users of the Sovereign ATMs will not attend and read the fee notice[s]" at issue in this case. Green Declaration at 7. However, as plaintiffs concede the question of whether Sovereign posted the Placard Notices in "prominent and conspicuous locations must be answered by reference to an objective standard." *See* Plaintiff's Opposition to Motion for Summary Judgment at 5. As every

---

[2]    Neither the plaintiff nor Mr. Green cite to any legal authority to support the proposition that the views or perceptions of a naïve user are in any way relevant to the issues before this Court.

first year law student learns, an objective standard " . . . is based on conduct and perceptions external to a particular person." Black's Law Dictionary (8th ed. 2004) at 1441. Under an objective – or reasonable person standard – the issue before the Court is manifestly not what a naïve user of the ATMs might attend or not attend. Instead, under an objective standard the Court asks what a reasonable consumer exercising a reasonable degree of vigilance would observe during the process of approaching and using the ATMs. *Cf. Phelan v. May Department Stores Company*, 443 Mass. 52, 57, 819 N.E.2d 550, 554 (2004) ("inquiry into a reasonable recipient's understanding of the words ... has been used... to prove that words are defamatory"); *Greenslade v. Mohawk Park, Inc.*, 59 Mass. App. Ct. 850, 853, 798 N.E.2d 336, 339 (2003) ("a landowner's duty to protect lawful visitors against dangerous conditions on his property ordinarily does not extend to damage that would be obvious to persons of average intelligence"); *O'Leary-Alison v. Metropolitan Property & Casualty Insurance Co.*, 52 Mass. App. Ct. 214, 217, 752 N.E.2d 795, 798 (2001) (In determining an insurer's duty to settle, the court employs an objective fest and asks: "whether a reasonable person with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insure[d] was liable to the plaintiff"); *Planned Parenthood of Massachusetts, Inc. v. Blake*, 417 Mass. 467, 474-475, 631 N.E.2d 985, 990 (1994) ("... the judge correctly applied the objective standard of whether a reasonable woman seeking abortion services would be threatened, intimidated or coerced by the defendants' conduct.")

By definition, the "reasonable person" is a layman and, *per force*, an expert's "assistance" simply is not needed for one "reasonable person" to determine how another "reasonable person" will or should act in a given circumstance. *See United States v. Hanna*, 293 F.3d 1080, 1086 (9th Cir. 2002) (excluding expert testimony as to whether a particular

- 6 -

communication could reasonably be viewed as threatening because "[w]ithout additional assistance, the average layperson is qualified to determine what a 'reasonable person' would foresee under the circumstances"); *Wald v. Costco Wholesale Corp.*, 2005 WL 425864, at *5 (S.D.N.Y. Feb. 22, 2005) (excluding warnings evidence because the question presented was a normative one to be judged by a "reasonable person" standard); *cf. Kopf v. Skyrm*, 993 F.2d 374, 378 (4th Cir. 1993) (permitting expert testimony because the standard was a "reasonable [police] officer", not a "reasonable man").

The use of an objective legal standard in addressing the issues of prominence and conspicuity is fully justified because, at ground, these issues call for nothing more than the application of simple common sense. *Heller v. United Parcel Serv., Inc.*, 754 A.2d 689, 698 (Pa. Super. Ct. 2000) ("whether or not the typeface of a document is conspicuous to the unaided human eye is a matter which is clearly within the knowledge and experience of every human being"); *cf. Scofield v. Telecable of Overland Park, Inc.*, 973 F.2d 874, 879 (10th Cir. 1992) (analyzing the "meaningful disclosure" requirements of *TILA* with a "common sense approach"). Indeed, as one court has observed, "[the term 'conspicuous'] . . . is one of those words about which it can be said, 'Everyone knows it when they see it.'" *New York Horse & Carriage Ass'n v. City of New York, Dep't of Consumer Affairs*, 545 N.Y.S.2d 439, 441 (N.Y. Sup. Ct. 1989).

Questions involving common sense or simple observation – like the conspicuousness question before this Court – do not require the "assistance" of an expert to answer. As the First Circuit expressly recognized, "[e]xpert testimony does not assist where the [Court] has no need for an opinion because it easily can be derived from common sense, common experience, the [Court's] own perceptions, or simple logic." *United States v. Zajanckauskas*, 441 F.3d 32, 39 (1st Cir. 2006); *See also, Torres v. Johnson Lines*, 932 F.2d 748, 751 (9th Cir. 1991) (expert excluded

where the case did not involve "any specific evidence that was so technical or complex that a jury could not have grasped it without the aid of experts").

Indeed, the presence of a "common sense" approach to issues like the one at bar helps to explain why courts often exclude the opinions of human factors "experts" like Mr. Green.

> *Courts have been prone to exclude the testimony of "human factors" experts when the facts and inferences to which they testified were within the common knowledge of jurors.* In *Scott v. Sears Roebuck & Co.*, 789 F.2d 1052, 1054 (4th Cir. 1986), the Fourth Circuit, in reviewing a motion for a new trial on a personal injury action involving a defective curb, found that the district court improperly admitted statistical evidence that persons wearing high heels tend to avoid walking on grates. The court explained that the evidence was excluded because "the witness was simply repeating what is *common knowledge and common sense.*" *Id.* Other courts have reached similar results. *See Persinger v. Norfolk & W. Ry. Co.*, 920 F.2d 1185, 1186, 1188 (4th Cir. 1990) (finding that human factors expert "*did no more than state the obvious*" where his testimony, "[w]hen stripped of its technical gloss, was that it was more difficult to lift an object from a seated position"); *Christopher v. Madison Hotel Corp.*, 875 F.2d 314, 1989 WL 50249 (4th Cir. 1989) (upholding the district court's exclusion of plaintiff's expert testimony explaining friction tests on a bathroom floor because "[i]t is *common knowledge* that shiny bathroom floors are slippery"); *United States v. Affleck*, 776 F.2d 1451, 1458 (10th Cir. 1985) (affirming the district court's exclusion of the testimony of a "memory expert" because "the average person is able to understand that people forget.").

*Hamilton*, 133 F.Supp.2d at 374-75 (emphases added).

In this case, as the undisputed photographic evidence plainly demonstrates, Sovereign posted the Placard Notices at issue in close proximity to the ATMs where reasonable consumers exercising a reasonable degree of awareness of their surroundings would be reasonably likely to observe the Placard Notice and have an opportunity to read it if they chose to do so. This Court simply does not require expert testimony with respect to an issue which the Court can address by exercising common sense, common knowledge and simple logic. It necessarily follows that

expert testimony will not assist the Court as required by Fed. R. Evid. 702. Therefore, this Court should strike the Green Declaration.

### III. CONCLUSION

This Court does not need an expert to tell the Court what is prominent and conspicuous in the mind of "reasonable persons." The photographic and videographic evidence before the Court is more than adequate to determine whether Sovereign posted its Placard Notices at prominent and conspicuous locations at or near the ATMs as required by the Act. Nor does this Court need Mr. Green's "help" in championing the plaintiff's effort to reframe the debate. Congress has drawn the battle lines for the parties, and Mr. Green's contrary opinions regarding the public policies at issue, and the evidence to be considered in addressing them, are not relevant. Accordingly, Mr. Green's opinions are not properly admissible and his declaration should be stricken.

**SOVEREIGN BANK**
By its attorneys,


/s/ John A. Houlihan
/s/ Donald E. Frechette
John A. Houlihan (B.B.O. #542038)
Donald E. Frechette (B.B.O. #547293)
Joshua W. Gardner (B.B.O. #657347)
EDWARDS ANGELL PALMER & DODGE LLP
111 Huntington Avenue
Boston, MA 02199-7613
(617) 239-0100 Telephone
(617) 227-4420 Telecopy

Dated: June 22, 2006

BOS_540058_2/JHOULIHAN